[No. 1942]

ROUND MOUNTAIN MINING COMPANY (A Cor-PORATION), Appellant, *v.* ROUND MOUNTAIN SPHINX MINING COMPANY (A Corporation), Respondent.

[See 35 Nev. 392]

### ON REHEARING

1. PUBLIC LANDS — PATENTS — CONCLUSIVENESS ON COLLATERAL ATTACK.

   A patent to land issued by the general land office is the highest evidence of title, and is conclusive against the government and all claiming under junior patents or titles until set aside or annulled. It is not open to collateral attack except upon a showing that the land department had no jurisdiction to dispose of the land.

2. PUBLIC LANDS—DECISIONS OF FEDERAL LAND OFFICE CONCLUSIVE.

   The decisions of the federal land office upon matters of fact, cognizable by it, in the absence of fraud or imposition, is conclusive everywhere else.

3. MINES AND MINING—PATENTS—COLLATERAL ATTACK.

   A mining patent is conclusive upon all matters which might have been the subject of an adverse claim.

4. MINES AND MINING—PATENTS—ADVERSE—WAIVER.

   Failure to file an adverse claim within the time fixed by law operates as a waiver of all rights which were the proper subject of such a claim.

5. MINES AND MINING—PATENTS, FACTS CONCLUDED BY.

   Upon the issuance of a patent to a mining claim, all matters which might have been tried under adverse proceedings are treated as adjudicated in favor of the patentee as fully as though judgment had been regularly rendered in his favor.

6. MINES AND MINING—PATENTS—FAILURE TO ADVERSE CONFLICTS.

   Where there is any surface conflict whatever, and there is a failure to adverse, after the patent has been issued to the applicant, the question of priority of title is conclusively determined in favor of the patentee.

7. Mines and Mining Patents—Federal Land Office—Protests—
Estoppel.

Notwithstanding a failure to assert adverse rights, an
adverse claimant will not be estopped from making a protest
in the federal land office, bringing to the notice of the depart-
ment any facts which tend to show noncompliance with the
requirements of law.

8. Mines and Mining—Patent Conclusive as to Location.

An entry, sustained by a patent, is conclusive evidence that
at the time of the entry there had been a valid location.

9. Mines and Mining — Conflicting Locations — Patent Pro-
ceedings—Priority—Necessity of Adverse.

When an owner of a lode claim makes application for a
patent and the owner of the claim in conflict seeks to challenge
the former's priority of right on account of the date of dis-
covery, he must bring an adverse suit, or the question, after
patent, will be as to him concluded.

10. Mines and Mining—Group Patent—Evidence of Adjudication
of Validity of Locations.

When the general land office issued a group patent
comprising five mining locations, and it appeared from the
face of the patent that one of these claims, the Los Gazabo,
was in conflict with each of the other claims known as the
Sunnyside No's. 1, 2, and 3, and the Sunnyside Fraction, the
land office having full knowledge of the situation of these
claims when it issued a patent to the group, including the Los
Gazabo, the effect of the issuance of such patent was an
adjudication of the validity of the location of the Los Gazabo.

11. Mines and Mining—Group Patent—Evidence of Adjudication
of Validity of Locations.

Where the general land office issued a patent to a group of
mining claims, one of which was entirely within the exterior
boundaries of the other claims, except for a very small portion,
about five one-hundredths of an acre in one corner, the fact
that there is such portion outside the exterior boundaries of
the other claims is evidentiary that the land office adjudicated
such location to be valid, for otherwise this small portion of
land included within the patent could find no support in
the law.

12. Mines and Mining—Group Patent—Construction—Conflicts.

Where a patent to a group of conflicting mining claims upon
its face contains no express exclusions and where the total
area granted by the patent accounts for the area in conflict
but once, it is manifest that there is not a double grant of the
conflict area, but such patent does not disclose upon its face
which of the claims takes such conflict area.

13. Mines and Mining—Group Patent—Construction Conflicts—
Presumption from Position of Discovery Point.

Where a group patent to several claims in conflict discloses
that the location point of one of the claims is within the con-
flict area, it will be conclusively presumed from the patent

that the claim having its location point in conflict with another claim takes the conflict area as between two such claims.

14. Mines and Mining—Point of Discovery.

The discovery point of a mining claim must be upon free territory.

15. Public Lands—Rules of Land Office, Force Of.

The rules and regulations of the general land office, in so far as they are not .in conflict with statutory provisions, have the force and effect of law.

16. Mines and Mining—Rules of Land Office—Field Notes of Deputy Mineral Surveyor.

Under section 38 of the regulations of the general land office providing that "The field notes and plat are made a. part of the application for patent," and section 130 of the same regulations providing that "The survey of a mining claim may consist of several contiguous locations, but such survey must * * * distinguish the several locations, and exhibit the boundaries of each," and section 153 of the same regulations providing that "When locations embraced in one survey conflict with each other, such conflicts should only be stated in connection with the location from which the conflict area is excluded," it is the duty of the deputy mineral surveyor to set forth in his field notes the exclusions of the conflict area, and in favor of the claim or claims such exclusions are made.

17. Mines and Mining—Application for Patent—Field Notes—Presumption.

Where the record does not contain the application for the patent nor a copy of the published notice, it will not be presumed, in the absence of a showing to the contrary, that such application or published notice is in conflict with the exclusions made in the field notes of the deputy mineral surveyor.

18. Mines and Mining—Application for Patent—Field Notes—Duty of Deputy Mineral Surveyor—Exclusions, Effect Of.

The fact that field notes of a group patent contain exclusions of the conflict area between the respective claims, which exclusions are made at the suggestion of the applicant for patent, cannot properly be said to be the self-serving declarations of the applicant, for, no matter at whose suggestion made, when the exclusions are embodied in the field notes of the deputy mineral surveyor and are approved by the surveyor-general, they become the exclusions made by the officers of the government upon whom the duty is imposed to make the same.

19. Mines and Mining—Group Patent—Field Notes—Exclusions Conclusive.

When a patent issues to a group of mining claims and therein refers to the field notes, the exclusions contained in such field notes become the exclusions of the government itself.

20. Mines and Mining—Patents—Surveys—Presumption.

It will be assumed that patents to mining claims are issued upon surveys made under the direction of the United States surveyor-general.

21. PUBLIC LANDS — PATENTS — FIELD NOTES AND PLAT PART OF DESCRIPTION.

    A reference in a patent to the official plat and survey makes such plat and field notes of such survey a part of the description of the land granted, as fully as if they were incorporated at length in the patent.

22. MINES AND MINING—GROUP PATENT—FIELD NOTES DETERMINATIVE OF CONFLICTS.

    When construing a patent to a group of mining claims for the purpose of determining which claim, or claims, takes the conflict area, reference may be made to the field notes of the deputy mineral surveyor referred to in the patent.

23. MINES AND MINING—LOCATIONS ON FREE GROUND.

    A valid location of a mining claim cannot be made upon ground covered by a prior existing location or locations.

24. MINES AND MINING—DISCOVERY ESSENTIAL TO LOCATION.

    The basis of a valid mining location is discovery, and the mere posting of a notice without discovery is of no force or effect so far as rendering invalid another subsequent location covering a portion of the same ground and based upon a valid discovery.

25. MINES AND MINING—CERTIFICATE OF LOCATION—EFFECT.

    A certificate of location of a mining claim duly recorded is *prima facie* evidence only of such facts as are required by law to be stated therein, provided they are sufficiently stated.

26. MINES AND MINING—CERTIFICATE OF LOCATION NOT EVIDENCE OF DISCOVERY.

    A certificate of location is not evidence of the fact of a discovery, and such certificate setting forth the date of location is not evidence of a discovery either upon that or any other date.

27. MINES AND MINING—PATENT CONCLUSIVE OF PRIOR DISCOVERY.

    As the validity of a mining location granted by a patent from the general land office depends upon priority of discovery, and as it is incumbent upon such land office to determine all facts necessary to support the validity of the location patented, it must be conclusively presumed that such question was determined in favor of the patented location.

28. MINES AND MINING — PATENT TO NONCONTIGUOUS PIECES OF GROUND.

    The federal land office may make a valid grant of a mining claim in two noncontiguous pieces of ground, separated by a prior location.

29. APPEAL AND ERROR—CONFLICT OF EVIDENCE—ADVERSE PROCEEDINGS.

    Findings of the trial court based upon conflicting testimony are conclusive upon this court upon appeal. The decision of the district court in adverse proceedings based upon conflicting evidence is binding upon the supreme court and the federal land office.

30. MINES AND MINING—PATENT PROCEEDINGS—FAILURE TO ADVERSE OR PROTEST—ESTOPPEL.

An owner of a conflicting mining claim, who fails to institute adverse proceedings when another party has applied for patent for the conflicting area, or to protest in the land office against the granting of such patent, cannot be heard to contest questions of fact upon which the patent is based.

31. PUBLIC LANDS—PATENTS—PRESUMPTION.

Courts are bound to presume, in the absence of a showing to the contrary, that a patent has been issued upon due and regular application.

32. MINES AND MINING—GROUP PATENT, EFFECT OF.

A patent to a group of mining claims does not simply describe the exterior boundaries of the land which is embraced by the group, but each location is described and each embraces a separate portion of ground, to the exclusion of every other claim the same as if a separate patent issued for each particular location, and all conflicts are determined by the patent.

33. ESTOPPEL—PLEADINGS—ACTION BETWEEN THIRD PARTIES.

A party to an action is not in position to assert an estoppel against the other party by reason of allegations in pleadings in a former action in which neither the party asserting the estoppel nor his grantors nor predecessors in interest were parties. An estoppel should be pleaded.

34. FRAUD—PLEADING—MINING PATENT.

Fraud must be alleged and proved. *Held*, that no element of fraud is involved in this case.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Theron Stevens,* Judge.

Action by the Round Mountain Mining Company against the Round Mountain Sphinx Mining Company, to quiet title to the Los Gazabo mining claim. Judgment for defendant, and plaintiff appeals. **Affirmed.** Rehearing granted. On rehearing, **reversed.**

The facts sufficiently appear in the opinion.

*R. G. Withers* and *Dickson, Ellis & Schulder,* for Appellant. (For extracts from briefs, see 35 Nev. 394–404.)

*Curtis H. Lindley, Detch & Carney, Wm. E. Colby, Grant H. Smith,* and *Horatio Alling,* for Respondent. (For extracts from briefs, see 35 Nev. 405–412.)

### ON REHEARING

By the Court, NORCROSS, J.:

The facts in this case presenting a somewhat novel as well as important question of law relative to the construction of a patent to a group of mining locations, and the petition for a rehearing having raised a doubt in the minds of members of the court as to the correctness of certain of the conclusions heretofore reached, and it appearing that we were in error in accepting as a fact the statement—"Appellant made no exclusion in favor of the Los Gazabo, either in its verified application for patent, or in its published notice, or in its final application to purchase"—contained in the brief of respondent (35 Nev. 406), the court was impelled to grant a rehearing.

The case has been reargued and we have again carefully considered the questions involved, aided by the exhaustive briefs and the illuminating arguments of eminent counsel upon both sides of the case. As a result of the further examination we have given to this case, we are convinced that we were in error in adopting in their entirety the views expressed by the learned trial judge.

The character of the action is stated in the former opinion (35 Nev. 393, 129 Pac. 308). Reference is there made to the issues in the case, but we think it advantageous to quote in addition the following paragraph in the amended answer:

"Denies that the plaintiff is now or ever was the owner of, possessed of, or entitled to the possession of, the Los Gazabo mining claim, situate in the Jefferson mining district, Nye County, Nevada, but admits upon information and belief that the plaintiff has by some means obtained an alleged patent for the said pretended Los Gazabo mining claim, which said alleged patent defendant alleges is without force or effect and wholly null and void because the same was not obtained or issued in pursuance of the statutes of the United States therein and for the providing of the issuance thereof."

For convenience of reference we incorporate in this opinion the diagram showing the relative situation of the Gold Leaf mining claim, the property of respondent,

and the Sunnyside-Los Gazabo group, the property of appellant.

We think it important also to set forth a portion of the language of the patent to this group, as the validity of that part of the patent which purports to grant title to the Los Gazabo claim is the ultimate question upon appeal in this case.   The patent, in part, reads:

"Whereas, In pursuance of the provisions of the Revised Statutes of the United States, chapter six, title thirty-two, and legislation supplemental thereto, there have

been deposited in the General Land Office of the United States the plat and field notes of survey and the certificate, No. 1315, of the Register of the Land Office at Carson City, in the State of Nevada, accompanied by other evidence, whereby it appears that the Round Mountain Mining Company did, on the twenty-eighth day of May, A. D. 1908, duly enter and pay for that certain mining claim or premises known as the Sunnyside No. 1, Sunnyside No. 2, Sunnyside No. 3, Sunnyside Fraction, and Los Gazabo lode mining claims, designated by the Surveyor-General as Survey No. 2815, embracing a portion of the unsurveyed public domain, in the Jefferson mining district, in the county of Nye and State of Nevada, in the District of Lands subject to sale at Carson City, and bounded, described and platted as follows:" * * * [Here follows a description by courses and distances of the several mining claims which the patent purports to convey in the order first above mentioned in the patent.]

**1-7.** In view of the allegation in the answer that the patent to the Los Gazabo is void because the same was not obtained or issued in pursuance of law, it is well to consider to what extent a patent is subject to collateral attack.

We quote from Lindley on Mines, 2d ed., sec. 777, the following:

"With the issuance of the patent the functions of the land department terminate.

"It is the culmination of the proceeding *in rem*—the final judgment of the tribunal specially charged with passing the government title. With the title passes away all authority or control of the executive department over the land and over the title which it conveys.

"To the extent that we have already covered the field, it is unnecessary to do more than recapitulate the results heretofore reached as to the force and effect of this judgment.

"(1) A patent for land is the highest evidence of title, and is conclusive against the government and all claiming under junior patents or titles until set aside or annulled. It is not open to collateral attack;

" (2) The land department is a tribunal appointed by Congress to decide certain questions relating to the public lands, and its decision upon matters of fact cognizable by it, in the absence of fraud or imposition, is conclusive everywhere else;

" (3) The government having issued a patent cannot, by the authority of its own officers, invalidate it by the issuing of a second one for the same property;

" (4) A patent may be collaterally impeached in any action, and its operation as a conveyance defeated by showing that the department had no jurisdiction to dispose of the lands; that is, that the law did not provide for selling them, or that they had been reserved from sale, or dedicated to special purposes, or had been previously transferred to others;

" (5) A patent is conclusive evidence that all antecedent steps necessary to its issuance have been properly and legally taken;

" (6) It is conclusive evidence of the citizenship and qualification of the patentee; and,

" (7) In cases of mining patents, that all matters which might have been the subject of an adverse claim have been conclusively adjudicated in favor of the patentee."

The same eminent author in section 742 says:

"It is so well established as to be axiomatic that a failure to file an adverse claim within the time fixed by law operates as a waiver of all rights which were the proper subject of such a claim. The issue of a patent is equivalent to a determination by the United States in an adversary proceeding, to which the owner of the adverse right is in contemplation of law a party, that the applicant's and patentee's rights were superior, and those which might have been asserted by the holder of the adverse title were valueless. In other words, all matters which might have been tried under the adverse proceedings are treated as adjudicated in favor of the applicants, and all controversies touching the same are to be held as fully settled and disposed of, as though judgment had been regularly rendered in their favor. Where there is any surface conflict whatever, and there is a failure to

adverse, after the patent has been issued to the applicant, the question of priority of title is conclusively determined in favor of the patentee. A failure to assert adverse rights, however, will not estop an adverse claimant from protesting and bringing to the notice of the department such facts as tend to show noncompliance by the applicant with the requirements of the law."

In *Empire State Co.* v. *Bunker Hill Co.*, 114 Fed. 420, Ross, J., speaking for the Circuit Court of Appeals, Ninth Circuit, said: "The application for the patent for the Last Chance was, as has been seen, for the whole claim, as indicated in the diagram hereinbefore set out, and carried with it, as has been said, the implied, if not the expressed, allegation that the location was made upon land at the time open to location, and was therefore prior to any location thereof by any one else. The issuance by the government of its patent, after due notice to all the world of the application, and ample notice to every one to contest it, conclusively determined, as against every one whose surface lines conflicted therewith, the priority of that location over every other, including the Stemwinder, and conferred upon the patentees and their successors in interest not only the entire surface of the claim, but, as against every one whose surface lines conflicted with those of the Last Chance, the extralateral rights conferred by section 2322 of the Revised Statutes to follow on their dip outside of the side lines, and within vertical planes drawn through the parallel end lines extended in their own direction, all veins, lodes, or ledges the tops or apexes of which lie inside the surface lines of the claim. As a matter of course, in the absence of a surface conflict, there would be no ground for an adverse claim, and no question would arise of which the land department could take cognizance. Conflicts in respect to extralateral rights growing out of locations whose surfaces do not conflict, and which are therefore beyond the purview of the proceedings in the land department, are matters solely for the determination of the courts when brought before them."

See, also, same case, 109 Fed. 538, and 186 U. S. 482.

In the case of the *U. S. Mining Co.* v. *Lawson,* 134 Fed. 769, the Circuit Court of Appeals, Eighth Circuit, speaking through Van Devanter, J., expressed the view that, from the inclusion of a conflicting area within a patent to a mining location, it did not necessarily follow that the patented location was adjudged to be prior in time to the location in conflict.   The opinion states: "Seniority is determined by the order in which they were located, whether they have been patented or remain unpatented. While the area in conflict is usually awarded to the senior claim, it is not always or necessarily so, because acts or circumstances entirely consistent with the true order of location may have intervened, which require that this area be awarded to a junior claim.   An application for a patent to one of the conflicting claims presents the question: Which is the superior claim within the overlapping surface boundaries?   And the inclusion of the area in conflict within a patent to one of the claims is necessarily a determination that at the time of the patent proceedings such area is a part of that claim.   Applying these principles to the facts of the present case, it is seen that the issuance of a patent for the defendant's claim, including therein the area within the overlapping boundaries, operated as a declaration or determination that within these surface limits the defendants' claim was superior, but not necessarily that it was prior in location. Whether this determination proceeded from a failure of the then owners of the complainants' claims to file an adverse claim, or from an actual inquiry and decision respecting the right of possession (Rev. Stat. secs. 2325, 2326, U. S. Comp. St. 1901, pp. 1429, 1430), is not shown, so it cannot be said, and it is not insisted, that in the course of the patent proceedings there was any actual issue, trial, or decision respecting the order in which the conflicting claims were located, or that the patenting of the areas within the overlapping boundaries was actually rested upon priority of location."

This view of the law is not in harmony with the law as stated in the Empire State case, *supra,* which held that the issuance of the patent established priority over

any location in conflict. There is no affirmance of this doctrine by the Supreme Court of the United States in the case upon appeal. (*Lawson* v. *U. S. Mining Co.*, 207 U. S. 1.) The latter court declined to consider the case from the standpoint of an assumption that there had been a conflict between the claims in controversy. Upon the contrary, it said: "In the absence of a record, or some satisfactory evidence, it is to be assumed that the patents were issued without any contest and upon the surveys made under the direction of the United States surveyor-general, and included only ground in respect to which there was no conflict."

The question involved in the Lawson cases was as to the ownership of a broad vein, the apex of which was bisected by the common side line of contiguous claims. Even assuming it to be the law, as held by the Circuit Court of Appeals (134 Fed. 775), that, as to the ownership of this broad vein, a patent would not necessarily establish priority even where a conflict had existed, nevertheless the case does not hold such a rule to be applicable to facts such as are involved in this case. The court says: "The defendants have the older patent, and we will assume that originally there were surface conflicts, as is insisted, and that the areas in conflict were patented as parts of the claim of the defendants. If the present suit related to the superior right to these surface areas, or to any underground or extralateral rights necessarily following or incident to such surface ownership, the claim of estoppel would be well taken, but, as the controversy is over a different subject-matter, and it is not shown that the question of priority of location was in fact presented and determined in the course of the patent proceedings, the estoppel cannot be sustained."

**8, 9.** In *Creede M. & M. Co.* v. *Uinta Tunnel Co.*, 196 U. S. 337, 353, 355, Brewer, J., speaking for the court, said: "An entry sustained by a patent is conclusive evidence that at the time of the entry there had been a valid location. * * * So, when the owner of a lode claim makes application for a patent and the owner of another seeks to challenge the former's priority of right

on account of the date of discovery, it is his duty to bring an advance suit, and, if he fails to do so, that question will be as to him concluded."

See, also, *Lawson* v. *U. S. M. Co.*, 207 U. S. 1, 15; *Smelter Co.* v. *Kemp,* 104 U. S. 646; 32 Cyc. 1040, and note to Revised Laws of Nevada, sec. 2383.

**10, 11.** The Gold Leaf claim was in conflict with the Sunnyside No. 1 and with the Los Gazabo. This conflict is admitted and its extent appears on the accompanying diagram. The conflict is also described in the field notes of the Sunnyside-Los Gazabo survey hereinafter referred to. Under the authorities cited, respondent, as owner of the Gold Leaf, was bound to adverse the application for the patent, providing such application was regularly made and providing a valid patent could be issued to the Los Gazabo location, pursuant to the application. No adverse having been made, respondent cannot now be heard to question any antecedent fact, such as priority of location, necessary to support the validity of the Los Gazabo, if the patent does actually convey the conflict area between the Sunnysides and the Los Gazabo to the latter.

There is no mention in the patent itself of exclusions of the conflict area between the Sunnysides and the Los Gazabo in favor of any particular claim or claims. It appears, however, from the face of the patent that such conflict exists, for one has but to trace the lines of the several claims as named and described in the patent and there is a resulting plat in accordance with the accompanying diagram. While the record does not contain a copy of the plat which was required to be posted on the ground and to accompany the application for patent, we know it must have shown upon its face the relative positions upon the ground of the several claims, the same as they appear upon the above diagram. The general land office necessarily had full knowledge of the situation of these claims, when it issued the patent to the group of claims, including the Los Gazabo. The effect of such issuance was in adjudication of the validity of the location of the Los Gazabo, unless it can be said that the

land office was acting in excess of its powers. This is made still more manifest from the fact that a portion of the Los Gazabo claim embraced within the patent extends outside of the limits of the Sunnyside claims. This area is small, it is true, about five one-hundredths of an acre, but it is part of the land conveyed by the patent, a part which can find no support in the law, unless the land department determined that the Los Gazabo was a valid location.

12. While the patent upon its face contains no express exclusions, and it would appear from a reading of the descriptions of the several claims that there was a double grant of the conflict area, it is manifest that such was not intended, as the conflict area is accounted for but once in the total area which is expressly conveyed by the patent. Counsel for appellant have argued from this that it follows that the patent discloses on its face that the exclusions were made in favor of the Los Gazabo. This, we think, is not a necessary conclusion from the patent itself.

13, 14. As between the Sunnyside No. 2 and the Los Gazabo, we think the conclusion would follow from the patent itself that the exclusion, as between those two claims, was in favor of the Los Gazabo, for the patent itself discloses the discovery point of the Los Gazabo to be within such conflict area, and it is well settled in the law that the discovery point must be upon free territory. (*Indiana-Nevada Co.* v. *Gold Hills Co.*, 35 Nev. 160.)

15, 16. We now come to the consideration of the admissibility in evidence of a certified copy of the field notes of the survey, which under the law are required to accompany the application for patent. (Rev. Stats. U. S. sec. 2325.) The rules and regulations of the general land office, in so far as they are not in conflict with the statutes, have the force and effect of law. (*Leonard* v. *Lennox*, 181 Fed. 760; *Wilkins* v. *U. S.*, 96 Fed. 837; *Caha* v. *U. S.*, 152 U. S. 211.)

By section 38 of the regulations of the general land office, relative to mining claims, it is provided: "The field notes and plats are made a part of the application for

patent, and care should be taken that the description does not inadvertently exclude portions intended to be retained.    The application for patent should state portions to be excluded in express terms." (See regulations found as a note to section 2421 of Revised Laws of Nevada.)

Section 130 of the same regulations (Revised Laws of Nevada, p. 726) provides: "The survey of a mining claim may consist of several contiguous locations, but such survey must, in conformity with statutory requirements, distinguish the several locations, and exhibit the boundaries of each.    The survey will be given but one number."

Section 153 of the same regulations (Revised Laws of Nevada, p. 726) provides: "The total area of each location and also the area in conflict with each intersecting survey or claim should be stated.    But, when locations embraced in one survey conflict with each other, such conflicts should only be stated in connection with the location from which the conflicting area is excluded."

Counsel for respondent in their reply to the petition for rehearing stated: "The general rule announced by appellant and supported by the authorities cited is undoubtedly correct—that when field notes are referred to in an instrument of conveyance they become a part of the description of the patent.    The surveyor's function is to run lines, establish corners and boundaries, and compute areas, but there his functions cease.    These matters are properly within his sphere of duty.    But he cannot constitute himself a tribunal and assume judicial functions and determine questions which are clearly outside of his line of duty, and which he is not authorized to do. Whenever he does this his survey and report on such points are to be ignored."

It was unquestionably the duty of the deputy mineral surveyor to set forth in his field notes the exclusions of the conflict area, and to designate the claim or claims in favor of which such exclusions were made.. The field notes offered in evidence and rejected by the court below show that the exclusions of the conflict area were made in favor of the Los Gazabo.

17. While the record does not contain the application for the patent or copy of the published notice, it is not to be presumed, in the absence of a showing to the contrary, that such application or published notice was in conflict with the exclusions made in the field notes of the deputy mineral surveyor.

18, 19. In *Waskey* v. *Hammer*, 223 U. S. 85, the court says: "Within the limits of their authority they act in the stead of the surveyor-general and under his direction, and in that sense are his deputies. The work which they do is the work of the government, and the surveys which they make are its surveys."

The plat and field notes of the deputy mineral surveyor must also have the approval of the United States surveyor-general before they are transmitted to the general land office. The fact that the field notes of a group patent contain exclusions of the conflict area between the respective claims of the group in favor of certain claims, which exclusions may have been made, and we presume are usually made, at the suggestion of the applicant for the patent, cannot, we think, properly be said to be the mere self-serving declarations of the applicant. No matter at whose suggestion made, when the exclusions are embodied in the field notes of the deputy mineral surveyor and are approved by the surveyor-general, they are the exclusions made by the officials of the government, upon whom the duty is imposed of making the same, and when patent issues and therein refers to such field notes the exclusions therein mentioned become the exclusions of the government itself.

20. As said by the Supreme Court of the United States in the Lawson case, *supra:* "It is to be assumed that the patents were issued * * * upon the surveys made under the direction of the United States surveyor-general."

21, 22. It is well settled that a reference in a patent to the official plat and surveys makes such plat and the field notes of such survey "a part of the description of the land granted, as fully as if they were incorporated at length in the patents." (*Foss* v. *Johnson*, 158 Cal. 119, 110 Pac. 294; *Cragen* v. *Powell*, 128 U. S. 691; *Chesapeake*

*R. Co.* v. *Washington R. Co.*, 199 U. S. 247; *Alexander* v. *Lively*, 17 Am. Dec. 50; *Steele* v. *Taylor*, 13 Am. Dec. 151.)

The plat and field notes referred to in patents have been referred to frequently by the courts to determine matters of boundary. The question of a reference to the field notes for the purpose of construing a patent to a group of mining locations has not heretofore been resorted to so far as we are advised. We can see no reason why such references may not be made. The real boundaries of the several conflicting locations may be determined only by a knowledge of the exclusions of the territory in conflict between them.

In the case of *Richmond and Other Lode Claims*, 34 L. D. 554, Secretary Hitchcock said: "It is carefully provided by those statutes that of each application for mineral patent notice shall be published and posted, whereby all others who may have or claim adverse interests may be warned and afforded opportunity to assert their claims in season. In other words, precisely what is sought to be secured by the application must be disclosed by the published notice, the notice posted in the local office, and the notice posted upon the claim. Upon these several elements or parts of the prescribed notice, and each of them, all others who may have or claim conflicting interests have a full right to rely; and any recital therein of exclusion of conflict as effectually eliminates the conflict area as if the exception and exclusion were in terms declared in the application for patent. It is true that the data contained in the field notes, illustrated by the official plat, constitute the official and controlling advice of the *locus* and extent of the claim or claims for which patent is sought."

**23-26.** It is contended on the part of respondent that the field notes disclose upon their face the invalidity of the Los Gazabo claim, for the reason that it appears therefrom that the Sunnysides Nos. 1, 2, and 3 were prior locations to the Los Gazabo. Accompanying the field notes are copies of the several location notices and original and amended location certificates in which it is set forth that the Sunnysides Nos. 1, 2, and 3 were

located February 20, 1906, and the Los Gazabo March 3, 1906. It is conceded that if the Los Gazabo was located upon ground covered by prior existing locations, such location would be invalid, but it is contended that it does not follow as a matter of law that, because the notices of location of the Sunnysides are of date prior to that of the Los Gazabo, the latter location is void. It is well settled that the basis of location is discovery and that the mere posting of a notice without a discovery is of no force or effect so far as rendering invalid another location covering a portion of the same ground based upon a valid discovery. (*Patchen* v. *Keeley,* 19 Nev. 404; *Gibson* v. *Hjul,* 32 Nev. 361; *Overman* v. *Corcoran,* 15 Nev. 147; *Fox* v. *Myers,* 29 Nev. 169; *Nash* v. *McNamara,* 30 Nev. 114; *Creede Mining Co.* v. *Tunnel Co.,* 196 U. S. 337; *Uinta Co.* v. *Creede Co.,* 119 Fed. 169; *Nevada Oil Co.* v. *Home Co.,* 98 Fed. 678; *Tuolumne Co.* v. *Moier,* 134 Cal. 583; *Weed* v. *Snook,* 144 Cal. 439; 39 L. D. 460; 27 Cyc. 556; Lindley on Mines, 2d ed. vol. 1, sec. 392.)

Lindley states the law succinctly as follows:

"Where such record is authorized, it is *prima facie* evidence only of such facts as are required by law to be stated therein, provided they are sufficiently stated. A record of a certificate of location which recites the citizenship of locators, the fact of discovery, and the fact that the location had been marked upon the ground so that the boundaries could be readily traced, is not evidence of any of these facts in any of the states or territories, for the simple reason that no such facts are required to be stated in any of the statutory notices. * * * While many of the states require the date of the discovery to be stated in the recorded certificate, this would not be evidence of the *fact* of discovery. A discovery once proved, such a record would, *prima facie,* fix the date. Discovery is the most important of all the acts required in the proceedings culminating in a perfected location. It is the foundation of the right without which all other acts are idle and superfluous."

**27.** As the validity of the Los Gazabo claim depended upon priority of discovery and as it was incumbent upon

the land department to determine all facts necessary to
a determination of such validity, it must be conclusively
presumed that such question was determined by the land
department in favor of the Los Gazabo. (Lindley on
Mines, sec. 742, *supra.*)

**28.** The contention of counsel for respondent that the
Los. Gazabo claim cannot be regarded as a valid location,
for the reason that, if so regarded, it would appear from
the plat that the general land office had granted a patent
to the Sunnysides Nos. 1 and 2 in noncontiguous pieces
of ground. This contention is without merit. We had
occasion to consider this identical question in one of the
Hornsilver cases recently decided. (35 Nev. 471.) In
that case we called attention to the fact that since the
decision in the Del Monte case, 171 U. S. 55, the earlier
decisions of the land office sustaining counsel's conten-
tion have been overruled and that "for a number of years
the land office has been granting patents to noncontig-
uous pieces of ground embraced in the same claim and
separated by a prior location." (See Lindley on Mines, 2d
ed. sec. 663, and other authorities cited.)

**29.** Testimony and documentary evidence were offered
upon the trial in support of the contention of respondents
that the Los Gazabo was a junior location to those of the
Sunnysides. The lower court found as a fact that the
Los Gazabo was the junior location, and in so finding laid
some stress upon statements contained in the location
certificates. If the question of priority were not fore-
closed by the proceedings in the land office culminating
in the patent, then the finding of the lower court as to
such fact, based on conflicting evidence, would be con-
clusive upon this appeal. But, as has been shown, the
patent was in fact a final judgment conclusively determin-
ing all facts necessary to support the patent. (*U. S. v.
N. P. R. Co.*, 95 Fed. 864.)

**30.** Respondent had an opportunity to present this
very question in an adverse proceeding in the state
courts, and a decision of the district court based on
conflicting evidence would have been binding on this
court and the judgment would have been binding upon

the land office. If, for any reason, respondent did not institute adverse proceedings, it nevertheless could have raised the question directly in the land office by filing a protest against the issuance of a patent to the Los Gazabo upon the ground that it was void because a junior location. (Lindley on Mines, sec. 742, *supra; Rupp* v. *Healey,* 38 L. D. 387.) Having failed to institute adverse proceedings or to protest in the land office against the issuance of patent to the Los Gazabo, respondent cannot now be heard to contest a question of fact upon which the patent is based.

That portion of the opinion of the trial court heretofore approved by this court, holding that "the validity of the Los Gazabo claim was not before the department and could not be questioned by the Gold Leaf in that proceeding, and that there was nothing at that time to show that the plaintiff was attempting to acquire any rights which could conflict with the rights of the defendants" (35 Nev. 418.), is clearly erroneous. A group patent, including the Los Gazabo, was applied for; the field notes made the exclusions of conflict area in favor of the Los Gazabo; the Los Gazabo was also in conflict with the Gold Leaf—necessarily, the validity of the Los Gazabo was before the department and it could have been questioned by the Gold Leaf.

31. We are bound to presume, in the absence of a showing to the contrary, that the patent issued upon due and regular application. Such application showed that the appellant was attempting to acquire rights by virtue of the Los Gazabo location which might conflict with any rights of respondent by virtue of its ownership of the Gold Leaf.

32. The contention of counsel for respondent that in issuing a group patent to several mining claims, a portion of which are in conflict with each other, the land department leaves the adjudication of priorities for the courts to determine in each instance, whenever the question assumes importance, cannot be supported, we think, in reason. If such were the case, there would be no object

in having a rule requiring the field notes to state the conflict in connection with the location from which the conflicting area is excluded, for, if this contention be true, there are to be no exclusions. If the question as to which location takes the conflict area is a matter to be left for the courts to decide, then the question may be decided one way in one case and another way in another case between different parties. If the discovery point of one location was within the conflict area, such location might in one case be adjudged valid and in another invalid. It was never the intention of Congress or the land department to leave questions of this kind unsettled after the patent issued. A patent to a group of mining claims does not simply describe the exterior boundaries of the land which is embraced by the group, but, upon the contrary, each location is described and each embraces a separate portion of ground to the exclusion of every other claim, the same as if a separate patent issued for each particular location.

**33.** Counsel for respondent have argued that appellant is estopped to assert priority in favor of the Los Gazabo claim because of certain allegations contained in an answer filed in a suit instituted by the Round Mountain Great Western Company against appellant, relative to title to certain conflicting claims involved in that action. It is contended that this answer asserts priority of title in the Sunnyside claims as against the Los Gazabo. Conceding this to be the effect of the pleading, it also alleges that "said location (Los Gazabo) was made and held by said C. R. Scott, L. R. Scott and Luther Morgan adversely and in hostility to the claims of defendant as owner of said Sunnyside No. 1, Sunnyside No. 2, Sunnyside Fraction, and Sunnyside No. 3 claims, and was located and claimed by said C. R. Scott, L. R. Scott and Luther Morgan as being upon the open unappropriated public domain of the United States."

This pleading was filed before the issuance of the patent. Respondent was not a party to that action, nor were its predecessors in interest shown to have been.

Respondent cannot claim estoppel by virtue of pleadings in a case in which it was in no way interested. There is no element of estoppel here, and, besides, estoppel was neither plead by respondent nor found to exist by the court below.

**34.** Upon the argument of this case, one of counsel for respondent contended that the patent to the Los Gazabo was void because procured by fraud. No element of fraud is presented upon appeal in this case. Fraud in procuring the patent was neither alleged in the answer nor found to exist by the court below. There is no intimation of the existence of fraud to be found in the findings or in the opinion of the trial court. (*Gruber* v. *Baker*, 20 Nev. 453, 476.) There does not appear to be any element of fraud involved in this case. (*King* v. *McAndrews*, 111 Fed. 860, 864; *Gonzoles* v. *French*, 164 U. S. 338.)

For the reasons given, it is our conclusion that the court below erred in holding the patent to the Los Gazabo claim to be void, and in excluding from evidence the field notes of the deputy mineral surveyor.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

McCARRAN, J.: I concur.

TALBOT, C. J., concurring:

I concur in the order and various sound, well-established legal propositions stated in the foregoing decision as written by our distinguished associate, Justice NORCROSS. But, in my opinion, other legal principles should be considered and applied as reasons for remanding the case for a new trial, and as a basis for the final adjudication of the rights of the parties. Owing to press of other matters, we were unable to give the cause the careful consideration it deserved at the time it was originally argued and first submitted to us.

Although the refusal of the district court to admit the field notes as part of the patent for the purpose of having them considered in reference to the description was

technical error, because they should be considered as at least a descriptive part of the patent, such error would not be ground for reversal unless prejudicial to the appellant or unless a new trial might result in benefit to him.

The question involved being whether the Los Gazabo has extralateral rights which would take the rich ore in dispute which lies beyond its boundaries, and which is not located within planes drawn through the end lines of the Sunnysides, the burden is upon the plaintiff to show that under the patent it has a prior right under the Los Gazabo location to the ground within the boundaries of that claim which conflicts with the Sunnysides, and which conflict covers all of the Los Gazabo excepting a small fraction of an acre.

As the patent itself describes the lapping ground first as being within the boundaries of the Sunnysides and later as being within the Los Gazabo, if the field notes are not considered it might be claimed that, as the lapping ground is first described as being within the Sunnysides, it was intended to be patented to them.

Differently from the patent, the field notes give the area in conflict to the Los Gazabo, and by its notice of location accompanying the field notes it appears that it was located subsequently to the Sunnysides, from which conceded fact, if any inference can be drawn in the absence of other controlling facts, it would be against the priority of the Los Gazabo, or certainly not in its favor. Notwithstanding that, under the notices of location accompanying the field notes, and the proofs and concessions of the parties, the Los Gazabo was the later location, it is said that the exclusions in the field notes in favor of the Los Gazabo can be sustained on the theory that it had the prior discovery.

Consequently, as far as shown by the record, the only thread on which the plaintiff can claim a recovery is the fact that in the field notes the deputy mineral surveyor excluded the conflicting ground from the Sunnysides in favor of the Los Gazabo. Such exclusion is in the nature

of a conclusion of law, and no fact is shown to support it. If such an exclusion can be supported at all, without facts shown to support or overthrow it, it must be on the presumption that in the application and published notice of application for patent priority was claimed in the Los Gazabo.

If such exclusion is contrary to facts shown, as, for instance, if the field notes or return of the deputy mineral surveyor had shown that the discovery on the Los Gazabo was subsequent to the discoveries on the Sunnysides, his exclusion in the field notes of the conflicting area in favor of the Los Gazabo should be treated as a mistake and ignored, as such errors apparent on the record usually are, and the ground in conflict should be considered as awarded to the Sunnysides by the patent, which would prevent the recovery sought by the plaintiff under its claim of extralateral rights for the Los Gazabo.

Before patent a claimant may shift his lines or float his location on the public domain if he does not interfere with the rights of others. The question of priority of location or discovery, or whether the Los Gazabo was located on the Sunnysides, and not on vacant ground, and was not a valid location before it was patented, may be regarded as immaterial, for the rights of the plaintiff are controlled by the patent, and any priority conveyed by the patent as far as it is supported by the application and notice of application for patent, regardless of any invalidity of the location prior to patent.

Regardless of any question of priority of discovery, and if it were admitted that there had been prior discoveries on the Sunnysides, if the plaintiff in the application and notice of application for the patent claimed priority for the Los Gazabo, and in the absence of protest or adverse proceedings the patent issued accordingly, the plaintiff has become entitled to priority in the Los Gazabo, and the defendant is estopped from denying any extralateral rights which have attached by reason of the grant of such priority.

The grant by the patent is in the nature of an adverse judgment, and the land office, the same as any tribunal,

is without power to grant more than is within the issues or than is claimed by the allegations in the application or in the published· notice, which is in the nature of a summons.   Hence, if the field notes are admitted in evidence upon a new trial, they will not be conclusive of any priority in favor of the Los Gazabo, if the application and notice of application for patent claim for the Sunnysides priority of location over the conflicting ground, for the land office is not authorized to convey by patent a priority not claimed by the application and notice and concerning which the defendant or others had no opportunity to protest.

Valuable rights should not be lost or controlled by the mere exclusion in the field notes or plat by a deputy mineral surveyor of ground within the boundaries of the prior location if the facts as shown by the. application and notice of application for patent do not support or warrant such exclusion.   Consequently, the case should be remanded for a new trial in order that the field notes, which the court refused to admit on the former trial, may be introduced in evidence, with the privilege of having the application and notice of application for patent admitted with the field notes, if either party desires.

The contention that appellant is estopped from claiming priority for the Los Gazabo for the ground in conflict because respondent in controversy with other parties claimed priority in the Sunnysides for this ground cannot be sustained as an estoppel by record.   Respondent is not claiming rights acquired under parties to that contention, and inconsistent defenses or claims may be set up in the same answer or pleading.   Facts constituting an estoppel *in pais*, such as that the respondent, while relying upon the claim by appellant that the priority of the ground in conflict rested in the Sunnysides, expended money in prospecting and opening rich ore at a point beyond the reach of the extralateral rights of the Sunnysides, but which is now claimed to belong to the Los Gazabo, are not alleged or proved.