# WESTERN PACIFIC RAILROAD COMPANY & Another
## *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

#### *Practice—Public Lands.*

In a suit brought by a District Attorney of the United States to set aside a patent conveying public lands, objection was taken in this court that it does not sufficiently appear that the suit was brought under authority from the Attorney-General: *Held,* That, the objection not having been taken below, the fact of such authority could be inquired into and shown here.

On the evidence it appeared that the lands in question were mineral lands, and were known to be such by the applicant for the patent, and agent for the railroad company, at the time of the application. The patent was set aside.

The bill was filed in the court below in February, 1877. Hearing was had on the evidence, and in June, 1878, a decree was rendered setting aside the letter patent as "issued by mistake and without authority of law." The bill did not disclose any authority from the attorney-general to bring the suit, nor was such authority shown in the court below, nor was any objection taken for the want of the averment or the proof of such authority. The controversy below, upon the facts, was in regard to the character of the lands, whether mineral or not; and, upon the law, in regard to the effect of the acts of the agents of the United States upon the patentee's title. The defendants below appealed from the decree.

*Mr. Henry Beard* for the appellants.—I. It does not appear in the pleadings or decree that the United States, by its attorney-general, authorized the filing of the bill in this cause. This should have been averred in the bill. *United States* v. *Throckmorton,* 98 U. S. 61.—II. The lands in question were not mineral lands within the meaning of that term as defined by acts of Congress. In the act of July 26th, 1866, 14 Stat. 251, c. 262, § 2, mineral lands are defined as "a vein or lode of quartz, or other rock in place, bearing gold, cinnabar, or copper," in the act of July 9th, 1870, 16 Stat. ch. 217, 235,

§ 12, they are described as "valuable mineral deposits in lands," and in Rev. Stat. § 2318, as "lands valuable for minerals." The lands in question were, in the regular administration of the land laws, surveyed and ascertained to be non-mineral lands, and patented as such. A second survey, after the United States has parted with the land, is inoperative to affect the patent.—III. The third point discusses the evidence.

*Mr. Assistant Attorney-General Maury* for the United States discussed the evidence, and presented the following letter from the attorney-general directing the commencement of suit.

"DEPARTMENT OF JUSTICE,
"WASHINGTON, *January* 17th, 1877.

"JOHN M. COGHLAN, U. S. Attorney, San Francisco, California.

"SIR,—I enclose a copy of a letter of the 16th instant, addressed to me by the Secretary of the Interior, and the enclosures therewith, to wit : A copy of the report to the Secretary by the Commissioner of the General Land Office, and a copy of a letter of March 14th, 1874, addressed by the then commissioner to the register and receiver at San Francisco.

"As requested by the Secretary, you will cause legal proceedings to be instituted to vacate the patent to the Western Pacific Company of California for the N. E. one-fourth of section 29, T. 1 N., R. 1 E., Mount Diabolo meridian.

"Very respectfully,
"ALPHONSO TAFT,
"*Attorney-General.*"

MR. JUSTICE MILLER delivered the opinion of the court.

John M. Coghlan, district attorney of the United States for the District of California, on behalf of the United States, brought the bill in this case in the circuit court of that district against the Western Pacific Railroad Company and Charles McLaughlin to set aside a patent of the United States conveying to the railroad company the northeast quarter of section 29, township one (1) north, range one (1) east, of Mount Diabolo meridian.

This patent was made under the acts of Congress granting

lands to the Union Pacific, Central Pacific, and Western Pacific Railroad Companies, to aid in building a road from the Missouri River to the Pacific Ocean.

The acts of Congress granted to each company the alternate sections within certain limits on each side of its road, and authorized the issue of patents for the same when the work was done and the sections ascertained. But they excepted out of this grant, among others, such sections or parts of sections as were mineral lands.

The bill in this case alleges, as the reason for vacating and setting aside the patent, that the quarter-section in question is mineral land, that it was so at the time of the grant, and was known to be so when the patent issued, which was so issued without authority of law by inadvertence and mistake.

The patent itself is not in the record as an exhibit, or as part of the evidence. The Western Pacific Railroad Company, to whom it was issued, though made defendant in the bill, was not served with the subpœna and did not appear. McLaughlin, the only defendant who did appear, defends as purchaser two degrees removed from the company. Instead of a general replication to McLaughlin's answer, the reply is an amendment to the original bill.

The whole record is so imperfect and the case so obscurely presented, that we feel tempted to dismiss it.

Waiving, however, these objections, there is enough to enable us to consider the two principal errors assigned by appellant.

The first of these is that there is no sufficient evidence that the suit was instituted under the authority of the Attorney-General, according to the principle established in the case of *United States* v. *Throckmorton*, 98 U. S. 61.

To this it may be answered that the objection was not raised in this case in the court below, as it was in that; that the case is argued in this court on behalf of the government by the Assistant Attorney-General, who files in the court a certified copy of the order of the Attorney-General directing the district attorney to bring the suit in the circuit court, as requested by the Secretary of the Interior.

We think the decree of that court, under these circumstances,

can hardly be reversed now, on this ground, taken here for the first time.

The other objection to the decree in favor of the United States is that the evidence does not establish as a fact that the land in controversy was mineral land when the patent issued.

An examination of the evidence on this subject convinces us that the circuit judge was right in holding that it was. It is satisfactorily proven, as we think, that cinnabar, the mineral which carries quicksilver, was found there as early as 1863, that a man named Powell resided on the land and mined this cinnabar at that time, and in 1866 established some form of reduction works there; that these were on the ground when application for the patent was made by defendant McLaughlin, as agent of the Western Pacific Railroad Company, and that these facts were known to him. He is not, therefore, an innocent purchaser. Concurring as we do with the circuit court in the result arising from the evidence, we do not deem it necessary to give in this opinion a detailed examination of it.

This being the first case of the kind in this court, a class of cases which may possibly be indefinitely multiplied, it is to be regretted that it was not more fully presented in the circuit court. Many interesting questions might arise in this class of cases not proper to be considered in this case. For instance, the nature and extent of mineral found in the land granted or patented which will bring it within the designation of *mineral land* in the various acts of Congress, in which it is excepted out of grants to railroad companies and forbidden to be sold or preempted as ordinary or agricultural lands are.

Suppose that when such land has been conveyed by the government it is afterwards discovered that it contains valuable deposits of the precious metals, unknown to the patentee or to the officers of the government at the time of the conveyance, will such subsequent discovery enable the government to sustain a suit to set aside the patent or the grant? If so, what are the rights of innocent purchasers from the grantee, and what limitations exist upon the exercise of the government's right? We can answer none of these questions here, and can only *Order that the decree below be affirmed.*