BREAUX, C. J.
The application for these writs raises a question of authority of the district attorney to continue in the prosecution of a suit brought by him in the name of the state, although the Attorney General filed a motion to stay the proceedings until an opportunity will offer itself for the Legislature to pass upon a compromise.
The suit in which the Attorney General filed a motion for a continuance relates to a large body of land in Tangipahoa parish.
The charge is that this land has been fraudulently entered and patents issued, and that the entrymen entered tracts of land largely in excess of the number of acres each entryman has a right to enter; that the statutory price of these lands is $1.25 per acre as they are not subject to tidal overflow; that these entries were obtained by fraud and misrepresentation of those by whom the land was entered; that the lands have gone into the possession of different individuals, among them the defendants, who have over 8,000 acres, worth a large amount (it is assessed at $11 and $12 an acre); that these parties are preparing to move the timber.
That relator received his authority to sue from the Governor of the state; that afterward he was requested by the Governor to stay proceedings until the matter could be laid before the General Assembly at its session in 1906; that the matter in the message-of the Governor was brought to the attention, of the General Assembly, but no action was-taken; that after its adjournment the cause was recalled and the case was proceeded with, but on the motion of the Attorney General it was continued in compliance with the-request of the Governor to lay before the-General Assembly of 1908 the compromise tentatively entered into by the Governor with; the defendants.
Whilst expressing terms of respect for the-high position of the Governor, the applicant desires authority from this; court by its decree to enable him to continue with the suit. He avers that Rev. St. § 1144, vests in him as district attorney full authority to prosecute the suit.
The defendants, Hackley, Hume & Joyce, made parties, substantially state in theiianswer that they have no knowledge of any matter and things averred in the petition of' the district attorney prior to the day that the suit was brought in January, 1906. They state that other persons applied to enter their lands and tendered $1.25 per acre to the register of the land office, and had a record made thereof on the public records of his-office. They state substantially: That the Attorney General declined to take part in the suit. That he was the proper party to corn duct the proceedings. That they acquired the lands in good faith, and that, even if a mistake had been made by the register of the land office and he allowed these lands to be entered as tidal overflow lands at 25 cents, per acre, instead of having them entered as-swamp lands at $1.25 per acre, and event if that mistake had been brought about by-the fraud and perjury of the original entry-men, it was against the policy of the state,, and against conscience for the state to attack its own title.
That the district attorney applied to the- *485 Governor, making to him such statements as induced the Governor to give him authority to bring suit for the recovery of the land. That the petition shows that the suit was not brought in the interest of the state, but of land speculators, who made the applications and tenders before mentioned. That the demand is for a cancellation of the patents, and that the land be decreed subject to the entry of $1.25 per acre, lands that relator and plaintiff urges are extremely valuable. That the Governor instructed relator to proceed no further with the cause. That, the relator having declined to follow the instruction, the Governor requested the Attorney General to act in the matter. That as soon as the Governor’s approval was obtained the sum of $27,447.12 was deposited subject to the conditions of the tentative compromise it is intended to place before the Legislature. That said sum is the amount the defendants shall pay in case the compromise meets with legislative approval.
The defendants alleged that, if the district attorney should gain the suit, the land speculators before mentioned would pay into the state treasury the sum of $12,551.26, a difference of $14,895.86 between the compromise and the statutory price of the land.
The Attorney General, who had been notified, presented a statement of his relation to the case, clearly setting forth his position in the matter. He had declined to take part in the suit. The Governor had requested that no action be taken, as he intended to refer the matter to the General Assembly; that he, the Attorney General, acted throughout the entire litigation under the conviction that the Governor had the right to direct him to take charge of the suit, and he had accordingly filed a motion and obtained a continuance of the case.
The district judge, also notified, in his answer, stated, in effect, that by his action to continue the case to await legislative action he had, as he thought, acted strictly in accordance with the requirement of the statute, granting needful authority to the Govern- or and the Attorney General in a proper'case to obtain needful delay for the purpose of effecting a compromise.
The issues before stated in regard to a compromise and in regard to the titles to the land go to the merits of the ease, and are not before us for consideration. They, none the less, form part of the facts needful to & proper understanding of the issues.
We have addressed ourselves to the task of determining whether or not there is authority in the statute to sustain the action of the lower court in continuing the cause until the next session of the Legislature in order to place the compromise before that body.
The General Assembly by Act No. 96, p. 122, of 1880, made it the duty of the district attorney, except in the city of New Orleans,, to represent the state in civil actions.
The statute (Act No. 65, p. 71, of 1884) made it the duty of the Attorney General to institute all suits that may be deemed neces.sary for the protection of the State.
It is also made the duty of the last-named! officer, when directed by the Governor, to> appear for the state in every court or tribunal in any case in which she may be interested or may be a party. Section 131 of the Revised Statutes.
It thus appears that considerable authority was vested, in the Attorney General regarding suits.
We are informed that it was in conformity with section 131 of the Revised Statutes that the Attorney General appeared in the district court, and moved for a continuance; that he appeared in court in compliance with the Governor’s request. The Attorney General must have acted in accordance with his own views, and because he deemed it advisable that the case should be continued.
The facts of the case abundantly sustain that view.
*487 We must decline to interfere. The continuance has been granted. The delay is ■comparatively short.
Generally continuance is a matter resting with the discretion of the District Judge. It does not appear in this case that he has exceeded his discretion.
Mandamus will not go to a court that has not exceeded its discretion.
There is a similarity between the functions of the law department of a state and those of the law department of the United States.
In regard to the latter, the Supreme Court of the United States has said that a suit may be brought by the government to cancel or annul a patent for land obtained by fraud or mistake.
The institution and oontrol of the suit is with the Attorney General as the head of one of the executive departments. United States v. Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 31. Ed. 747.
There are other decisions. Western Pac. R. Co. v. U. S., 108 U. S. 512; Id., 107 U. S. 528, 2 Sup. Ct. 802, 27 L. Ed. 806; U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; also decisions of this court. State ex rel. Baldwin v. Dubuclet, 27 La. Ann. 30; Succession of Fletcher, 12 La. Ann. 499; State ex rel. Strauss v. Dubuclet, 25 La. Ann. 163.
The State is represented by the Attorney General, the highest law officer. Succession of Fletcher, 12 La. Ann. 498.
Both the Attorney General and the district attorney are agents of the state. Both have a right to be heard. In this instance the reasons urged by each have been considered with care.
As the continuance granted involves a delay which cannot be prejudicial to the state for the time being, it should be permitted to remain undisturbed.
The district attorney urges that, where the Attorney General appears in a ease at the request of the Governor, his duty is to act as Attorney General, and take such measures as in his official discretion as a judicial officer he believes to the best interest of the state.
This is precisely the position, as we appreciate the issues, taken by the Attorney General.
The honorable district attorney invites our attention to articles 16 and 17 of the Constitution, regarding the interference of one department of the government with another.
It is sufficient in answer to state that there is no interference here In matter of deciding issues. Causes are frequently temporarily continued without it being an interference with judicial authority.
The district attorney also urges in substance that there is no good reason for the continuance, for the General Assembly is prohibited from compromising claims or liabilities. Const, art. 59, and article 48, last paragraph.
There is no question before us of the authority of effecting a compromise. That is not an issue up for consideration. The General Assembly should be given the opportunity to consider the questions that here arise in regard to these lands. They doubtless will settle upon such action as will protect the state. Temporary continuance is not violative of the articles cited.
In reference to proceeding by mandamus:
There was no grave error committed, no absolute right claimed, no prejudicial order given requiring immediate attention.
The general rule of law does not require that in such a condition mandamus should be issued.
For reasons stated, the writ of certiorari issued in this case is recalled and discharged, the applicant’s demand is disallowed, and the petition dismissed.