## UNITED STATES v. LYNCH et al.

First Division. Ketchikan. January 31, 1927.

No. 764–KA.

1. **Pleading** ⬅➡358, 359—**Motion to Strike Answer.**
      Where an answer contains admissions and denials of material matters pleaded in the complaint, it will not be stricken on motion that it is sham, frivolous, and states no defense to the complaint.

2. **Pleading** ⬅➡355.
      Where admissions, denials, and new allegations are intermixed in the same paragraphs of an answer, and the new matter is also pleaded in affirmative defenses, it is illogical and a bad pleading, and should be corrected by motion to strike or correct the pleading.

3. **Indians** ⬅➡1—**Treaties.**
      Undoubtedly, at the time of the cession of Alaska to the United States on March 30, 1867, the Tlinket tribe of Indians was classed as an uncivilized tribe. Under this treaty, the Tlinket tribe became subject to such rules and regulations as the United States may thereafter adopt as to the native Indians of the United States.

4. **Indians** ⬅➡10—**Occupation of Public Lands.**
      Where the defendant, a native-born Indian of Alaska, and her predecessors in interest, were in the actual use or occupation of tide lands, or claimed them on May 17, 1884, and continued in such occupation, use, or claim to the commencement of the action, she could not be dispossessed by any action of the Secretary of the Interior or by the court.

5. **Indians** ⬅➡12—**Reservations—Tide Lands.**
      The Secretary of the Interior in 1905 made an order reserving certain tide lands at the mouth of Ketchikan creek, Alaska,

⬅➡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for landing places for canoes, boats, and other water craft for the Indians residing there. *Held,* no reservation was made for any particular native; that other portions of the reserve have been encroached upon would not authorize the defendant, though qualified by birth, to appropriate a definite part thereof, to the exclusion of others equally qualified.

6. Indians ⟨key⟩27(1)—Navigable Waters ⟨key⟩36(3)—Indian Reservation in Alaska—Tide Lands—Trespass.

The title to these lands is in the United States, and, being tide lands, is held in reserve for the benefit of the future state. The control thereof is in the Secretary of the Interior, subject only to such legislation as might have been adopted by Congress. No one Indian could bring an action of trespass against any person trespassing on the reserve, because of a lack of title, and because of a lack of possessory right to any particular part thereof. The United States, having title, would be the only proper party plaintiff in such an action.

7. Attorney General ⟨key⟩7—District and Prosecuting Attorneys ⟨key⟩9—Powers.

The Attorney General of the United States and the United States district attorneys have authority to prosecute all suits in which the United States are concerned.

A. G. Shoup, U. S. Atty., of San Jose, Cal.
James Wickersham, of Juneau, for defendants.

REED, District Judge. This cause is before me on a motion of the United States attorney to strike from the files the separate answer of defendant Jennie Lynch, for the reason that the same is sham, frivolous, and states no defense to the plaintiff's complaint. The answer contains admissions and denials of material matters pleaded in the amended complaint. While there is much matter set up in the answer which is irrelevant and immaterial, no specific objection thereto has been raised by the United States. Had objection been raised to this immaterial matter, separating it from the denials, the motion would probably have been granted. The denial raises issues of fact over material allegations in the complaint. The result is that the motion to strike the answer as a whole will be denied.

The United States attorney further demurs to the answer, and to the whole thereof, and new matter therein contained. It is hardly necessary to state that, if the whole answer is in-

sufficient, the demurrer to the new matter therein would be sustained. What is meant by "new matter contained therein" is hard to determine. The answer itself is an example of bad pleading, in that it contains a number of allegations and admissions, mixed up with denials, and these admissions and allegations which are attached to the denials in the complaint are also pleaded as affirmative defense. It is therefore necessary to carefully separate the affirmative allegations from the denials in the answer.

The complaint in the action is in the nature of an action to enjoin trespassers on property, the title to which is alleged to have been vested in the United States. In its first cause of action, the complainant alleges that the title to the tide lands described is in the United States, and that the same are held in trust for the use and benefit of any future state created out of the territory of Alaska; that subsequent to the enactment of the Homestead Act of May 14, 1898 (30 Stat. 409), the defendants unlawfully and wrongfully entered upon said land, without any lease, license, or grant thereof, and placed a scow thereon, and have threatened to drive piling thereon for the purpose of building foundations and other permanent structures, and have taken possession thereof for their individual and private use.

The second cause of action sets out that the lands were reserved by the United States for the use of the Indians of the territory of Alaska as a landing place for their canoes and other water craft, and that the defendants wrongfully and unlawfully went upon said lands so reserved, and without any grant or lease or license, or permission of any kind from the plaintiff, placed thereon a scow and piling, and threatened to erect foundations and other permanent structures thereon, and have taken possession thereof, and will continue wrongfully and unlawfully to maintain the same, and convert the said area of tide lands to their own individual and private use, to the exclusion of all others, and to the hindrance of the natives of Alaska and the public generally in the free and uninterrupted use thereof for the purpose of landing places for canoes and other craft, and other public purposes.

The third cause of action is that the tide lands mentioned in plaintiff's cause of action are covered at mean high tide by the navigable waters of the United States, and that under

the provisions of the Act of Congress of March 3, 1899 (30 Stat. 1121), entitled "An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes," it was made unlawful for any person to create any obstruction, not affirmatively authorized by Congress, to the navigable capacity of any waters of the United States, or to build or commence to build any structures in any of the waters of the United States, except within the established harbor lines, unless authorized by the Secretary of War prior to the beginning of same, etc.; that subsequently to March 3, 1899, defendants have wrongfully and unlawfully encroached upon said tide lands so covered at mean high tide by the navigable waters of the United States, and, in violation of the act of Congress aforesaid, and without any authority, have placed on said tide lands a scow and piling, and have threatened, without authority or authorization, to drive said piling for the purpose of building foundations and other permanent structures upon said tide lands; and, for the purpose of abating the nuisance and purprestures described, the complainant asks an injunction, restraining the erection of said obstructions and structures and abating said nuisances.

The answer of defendants to the first cause of action denies each and every allegation, except that it admits that she was residing on a tract 150 feet square, being a portion of the tide lands described in the complaint, in a floating houseboat, and alleges that she is a member of the Ketchikan band or Tlinket tribe of Indians, and that she and her family did occupy the upland and tide land on both sides of Ketchikan creek, and have so occupied the same from time immemorial as a site and place for landing and keeping their canoes, and for a residence and occupation, and that at all the times mentioned in the first cause of action of the complaint did, with her family and blood relatives of the Indian band aforesaid, so reside upon and occupy and possess the said land now occupied by defendants as members of the aboriginal races inhabiting Alaska when annexed to the United States, and their descendants of whole or half blood; and that the defendant claims the right to reside upon and occupy the same tract so occupied by her as described, under the provisions of the Constitution and laws of the United States, and under the third article of

the treaty of cession whereby Alaska was ceded by Russia and annexed to the United States on March 30, 1867, as a native Indian of the Ketchikan band of the Tlinket tribe, and as a citizen of the United States naturalized since her birth by the Constitution and laws of the United States.

Undoubtedly at the time of the cession of Alaska to the United States on March 30, 1867, the Tlinket tribe of Indians was classed as an uncivilized tribe. Article 3 of the treaty of cession, between the United States and Russia, provides that:

> "The inhabitants of the ceded territory, * * * if they should prefer to remain in the ceded territory, they, with the exception of uncivilized native tribes, shall be admitted to the enjoyment of all the rights, advantages and immunities of citizens of the United States, and shall be maintained and protected in the free enjoyment of their liberty, property and religion. The uncivilized tribes will be subject to such laws and regulations as the United States may, from time to time, adopt in regard to aboriginal tribes of that country."

Under this treaty the Tlinket tribe became subject to such rules and regulations as the United States may thereafter adopt as to the native Indians of the United States. Therefore, by the provisions of the treaty, the Indians of the Tlinket tribe became citizens of the United States, in common with the native Indian tribes of the United States, under the Act of June 2, 1924 (8 USCA § 3), which provided that all non-citizen Indians, born within the territorial limits of the United States, shall be citizens, and that the granting of citizenship shall not, in any manner, impair or otherwise affect the right of any Indian to tribal or other property.

I do not see that the affirmative allegations described above, which are incorporated with the denials, constitute any defense to the first cause of action by virtue of the treaty of cession between Russia and the United States. A different question would arise if the defendant alleged that she, on May 14, 1884, or June 6, 1900, was in the actual occupation or was using or claiming the lands described in the complaint, and that such use, occupation, or claim continued down to the initiation of the action. The allegation is that the defendant and her family did, from time immemorial, occupy the upland and tide land on both sides of Ketchikan creek as a landing place for their canoes, and that at all times and up to

the time \of the initiation of the action did, with her family and relatives of Indian blood, reside and occupy said tract, and claim the right to reside upon and occupy the same, as a landing place and place to keep their canoes. The act of May 17, 1884, provides that:

"Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them, but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress." Section 8, Act May 17, 1884, 23 Stat. 26.

Section 27 of the Act of June 6, 1900, 31 Stat. 330 (48 USCA § 356 [U. S. Comp. St. § 5095]) provides that:

"Indians * * * shall not be disturbed in the possession of any lands actually in their use or occupation."

There has been no legislation by Congress particularly appertaining to the lands occupied by the Indians of Alaska on May 7, 1884. It is true that there is a provision for the Indians of the United States to enter lands under the Homestead Act. 23 Stat. 96 (43 USCA § 190). This act is also applicable to the Indians of Alaska who may enter lands under the Homestead Act, but the entry of lands under the Homestead Act is necessarily restricted to lands above the line of ordinary high-water mark. There is no specific provision of legislation relative to the acquisition of title to public lands by Indians occupying them on May 17, 1884, that I am aware of.

The lands in question are tide lands, and under the decision of the Circuit Court of Appeals for the Ninth Circuit, in Heckman v. Sutter, 119 F. 83–88; Id., 128 F. 393, are within the prohibition of the Act of May 17, 1884, in that, if they are occupied or used or claimed by Indians on that date, they should not be disturbed in their possession. If, then, the defendant and her predecessors in interest were in the actual use or occupation of the lands in dispute, or claimed them, on May 17, 1884, and continued in such occupation, use, or claim to the commencement of this action, she could not be dispossessed by any action of the Secretary of the Interior or by the court; but these facts are 'not 'pleaded in the answer to the first cause of action, and, as pleaded, the facts alleged are not sufficient, in view of the demurrer; and the demurrer should be sustained.

The answer to the second cause of action is in the nature of
denials, admissions, and affirmative allegations, coupled with
the admissions. It is admitted therein that the tract in ques-
tion was a part of the tract reserved by the Secretary of the
Interior for the use of the natives of Alaska as a landing place
for their canoes and other craft, and was so used by such na-
tives, and then the answer continues with a number of alle-
gations, material and immaterial intermingled, so that it is
difficult to determine the nature of the defense. Defendant
alleges that on March 30, 1867, when Alaska was ceded by
Russia to the United States, her parents and relatives were
members of the aboriginal, uncivilized tribes of Alaska; that
at that time, from time immemorial preceding, and from that
time to the present, her ancestors and family and herself were
members of the Tlinket tribe of Alaska Indians, and resided
upon and occupied said tide lands and uplands in the vicinity
of the mouth of Ketchikan creek, with the consent of the Unit-
ed States, in pursuance of its settled policy of settling Indians
on public lands for their benefit, etc.; that the tract of tide
land occupied by her and her floating houseboat is and always
was a part of said land and the property of said Indians reserv-
ed for her and their use.

Then follows, in paragraph 3, a statement of encroachment
on said reserve by white persons, Mexicans, etc., carrying on
various "unlawful" occupations, which encroachments, it is
alleged, are connived at by the officials of the United States;
also that a part of the town of Ketchikan is built on said lands,
etc.; that the encroachment on the Indian lands is being rap-
idly extended, and that within a short time the whole of said
lands will be occupied by white persons and aliens, and lost
to the Ketchikan Indians. Then follows an allegation to the
effect that on or about the 9th day of September, 1924, she
did make, sign, and file, in the office of the recorder for the
Ketchikan recording district, at Ketchikan, Alaska, a notice of
settlement upon and claim to said tract, in which notice the de-
fendant described said tract of land by metes and bounds sub-
stantially as stated; that the defendant has been in possession
of said tract for a long time prior thereto, and is now in pos-
session of the same, residing thereon in her said floating house-
boat, and claiming the right of possession and occupancy there-
of as a native Indian and member of the Ketchikan Tlinket

tribe, and as a citizen of the United States, naturalized by the Constitution and laws of the United States since her birth.

From the answer, it may be taken that the defendant is claiming the title and right of possession to the particular tract in controversy, by virtue of her location in 1924, as well as the right of possession thereto by virtue of her being a native Indian, under the terms of the reservation of said tract by the Secretary of the Interior in 1905. As I understand it, this reservation was made of certain tide lands adjoining Ketchikan creek under the fourth proviso of section 10 of the Act of May 14, 1898 (48 USCA § 464 [U. S. Comp. St. § 5091]), reading:

"And provided further, that·the Secretary of the Interior shall reserve for the use of the natives of Alaska suitable tracts of land along the water front·of any stream, inlet, bay, or seashore for landing places for canoes and other craft used by such natives."

The reservation is made for the use of the natives in common; no title to any particular tract is vested in any native by reason of reserving land for such purpose. It seems to me that it was intended by the act that the Secretary of the Interior should hold out, from sale or disposal under the public land laws of the United States suitable tracts of land for the use of the natives for landing places for their canoes. In other words, the approaches to the waters of streams, bays, and the seashore, selected by the Secretary of the Interior, should be reserved by the United States for the use of the natives as landing places for their water craft. It does not signify that the reserve is made to any particular native, or that any particular native should have permanent possession of any particular portion of the reserve to the exclusion of others.

That other portions of the reserve have been encroached upon would not authorize the defendant, though qualified by birth, to use the reserve as a landing place for her water craft, to appropriate a definite part thereof to the exclusion of others equally qualified. The title to these lands is in the United States, and, being tide lands, are held in reserve for the benefit of the future state. The control thereof is in the Secretary of the Interior, subject only to such legislation as might have been or may be adopted by Congress. No one Indian could bring an action of trespass against any person trespassing on the re-

serve, because of a lack of title, and because of a lack of possessory right to any particular portion thereof. The United States, having the title, would be the only proper party plaintiff in such an action. This being my view of the nature of the reserve authorized by the act, it follows that the defendant can claim no rights by reason of her location on the premises. The most that she can claim is the right of landing her houseboat within the limits of the reserve, and that not to the exclusion of any other persons. Nor has she any permanent right to any portion of the reserve. The fact that the defendant is a native Indian could not affect her status as a trespasser, unless she came within the provisions of the Act of May 17, 1884.

The demurrer to the affirmative matter pleaded as a defense to the second cause of action will be sustained.

The first affirmative defense challenges the authority of the Attorney General of the United States and of the United States attorney to bring this action, and further challenges the jurisdiction of this court to hear and determine this case, or render any judgment herein against the defendant. Counsel has stated that this defense is based upon the authority of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93. That case was an action brought to cancel the patent issued by the United States to land, on the ground of fraud perpetrated in securing the patent to the land. The court said:

"In the class of cases to which this belongs, however, the practice of the English and American courts has been to require the name of the Attorney General as indorsing the suit before it will be entertained. * * * It is essential, therefore, to such a suit that, without special regard to form, but in some way which the court can recognize, it should appear that the Attorney General has brought it himself, or given such order for its institution as will make him officially responsible for it, and show his control of the cause."

See, also, McLaughlin v. U. S., 107 U. S. 528, 108 U. S. 510, 2 S. Ct. 802, 862, 27 L. Ed. 621, 806; Western Pacific Ry. Co. v. U. S., 107 U. S. 526, 108 U. S. 510, 2 S. Ct. 802, 862, 27 L. Ed. 621, 806; Causey v. U. S., 240 U. S. 401, 36 S. Ct. 365, 60 L. Ed. 711.

This action is not an action to set aside a patent. It is an action to enjoin alleged trespasses on reserved lands of the United States. The case of United States v. Throckmorton does not apply to an action of this nature.

The defense challenges the authority of the Attorney General of the United States to institute the action, as well as that of the district attorney. The authority of the Attorney General of the United States to institute actions on behalf of the United States is settled by the case of United States v. San Jacinto Tin Co., 125 U. S. 273, 8 S. Ct. 850, 31 L. Ed. 747. The authority of the district attorney is provided for by section 771, R. S. (28 USCA § 485 [U. S. Comp. St. § 1296]), in the following language:

"That it shall be the duty of every District Attorney to prosecute, in his district, all delinquents for crimes," etc., "and all civil actions in which the United States are concerned."

Even if specific authority has not been granted by the Attorney General to the district attorney to prosecute this action, I think he is authorized by section 771, R. S., above quoted; but, as I understand it, the United States has authority to bring this action.

As to the want of jurisdiction of this court over the person of the defendant, in a case of trespass I am of the opinion that the court has jurisdiction, even if the lands should be reserved for the use of the Indians as a landing place for their canoes.

The demurrer to the first affirmative defense will be sustained.

As the second affirmative defense is the same as set forth in the affirmative plea, with denials in the answer, the same ruling will apply to this defense, and the demurrer will be sustained.