HENRY CROFOOT, A. G. WOOD AND MURMANILL CORPORATION, APPELLANTS, v. STARR HILL, JR., RESPONDENT.

No. 4037

June 6, 1958.                    326 P.2d 417.

174

(Petition for rehearing denied July 10, 1958.)

*James A. Callahan,* of Winnemucca, *Theodore A. Kolb, Sullivan, Roche, Johnson and Farraher,* of San Francisco, for Appellants.

*D. M. Leighton* and *John H. Mathews,* of Winnemucca, for Respondents.

# OPINION

By the Court, BADT, C. J.:

This appeal involves the conflict of a lode claim with a placer, or, more closely defined, the question of the existence of a known lode within the boundaries of the placer at the time of the placer patent application. The further question involved is whether mere proof of the filing of a certificate of lode location within the boundaries of a prior placer location, by parties foreign to the litigation, so segregated the lode from the public domain that the United States was precluded from disposing of the ground by patent to the owner of the placer.

Appellants' predecessors located the Sheol Sulphur Placer Mines Nos. 1, 2 and 3 in 1891 and No. 4 in 1902. Since then appellants or their predecessors have been continually in possession except as herein noted. On January 22, 1919, Nevada Sulphur Corporation, appellants' predecessor, made application for a placer patent for the four Sheol Placers. On April 5 of the same year Alunite Company of Nevada filed an adverse in the land office, alleging that, as successor to one I. C. Clark and one J. D. Knox, it was the owner of certain conflicting lode claims within the placer ground applied for. On April 28 of the same year the adverse claimant filed its adverse suit to which an answer was filed denying the existence of the claimed lodes as known veins and on September 13, 1920, the adverse action was dismissed by stipulation. On June 8, 1923, the land office issued a placer patent without exclusions, excepting the clauses hereinafter recited, and permitted the applicant to purchase all of the property as placer ground at $2.50 per acre.[1]

On March 26, 1955, respondent located the Pal Lodes Nos. 1, 2, 3 and 4 within the boundaries of the Sheol Placers 1, 2, 3 and 4, and on June 16, 1955, filed his complaint to quiet his title to the four Pal Lode claims. He

---

[1]The land office in issuing the patent without definite exclusions did so under rules requiring a field examination by one of its officers to determine the character of the land and requiring it specifically to set forth or exclude known veins contained within the placer ground.

had read in a mining and engineering journal of the presence of alunite in the district. He investigated appellants' patent and particularly that part of it excluding claimed or known lodes, investigated the property itself, decided that the lodes were open to location, located them, performed certain work upon the property and recorded his certificate of location.

In setting his stakes and marking his boundaries upon the ground, he used identical points embraced in certain prior locations of the Alunite Lode (which he located as the Pal No. 1), the Alunite No. 1 (which he located as Pal No. 2), the Sulphate Lode (which he located as Pal No. 3), and the Pacific No. 2 Lode (which he located as Pal No. 4). The original locations had been made on July 13, 1917 by Knox and Clark, who then recorded their certificates of location for their said four lode claims. Alunite Company, successor to Clark and Knox, for the fiscal year July 1, 1918 to June 30, 1919, in place of performing any assessment work on the lodes for that period, filed, pursuant to an act of Congress, its notice of intention to hold the said four lodes. In April of 1923 it filed a proof of assessment work "for the year 1922." It also filed proofs of labor for the year ending June 30, 1931. Accordingly, since the location in 1917, it did no work on the property, except for 1919 and 1931, for the 38 years till respondent located in 1955. It did, however, file notices of intention to hold for the years 1932, 1933, 1934, 1935, 1937 and 1938. For the next 17 years from 1938 to 1955 there is neither record nor proof of any kind that the Alunite Company conveyed the property to anyone else, made any further filings of any kind, did any work upon the property or was ever present upon the property. Respondent does not claim to be in privity with Alunite Company or with Knox and Clark, or either of them, or to be a grantee or successor in interest.

Under these circumstances the learned trial judge found for respondent on two grounds: (1) that there was a "claimed lode" within the boundaries of the placer

(and we speak of "the placer" and "the lode" as indicating the legal situation with reference to all of the claims involved) which by the terms of the placer patent was excluded therefrom; and (2) that the recordation of the Knox and Clark location certificates in 1917 had segregated the four lode claims (corresponding identically with respondent's Pals 1 to 4 located in 1955) from the public domain, and that the United States had, therefore, parted with its title and could no longer convey or patent such ground to appellants. With reference to the first ground it should be noted that the court did not find that there was a known lode within the placer patent application. Respondent, in support of the judgment, insists (1) that such lodes were excluded by reason of the fact that they were "known to exist" at the time of the application for placer patent, and (2) that they had been segregated from the public domain by reason of the Knox and Clark locations and remained thus segregated until respondent's 1955 filings, so that the finding of a known lode was immaterial.

(1) At an early date conflict and uncertainty resulted from the wording of placer patents as issued by the United States Land Office. In the instant case, as under the procedures in the earlier cases, the patent as issued granted to appellants' predecessors the Sheol Placers 1 to 4, subject to the following:

"First. That the grant hereby made is restricted in its exterior limits to the boundaries of the said mining premises, and to any veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, which may have been discovered within said limits subsequent to and which were not known to exist on January 22, 1919.

"Second. That should any vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, be claimed or known to exist within the above-described premises at said last named date, the same is expressly excepted and excluded from these presents."

The federal statute under which the patent was issued is R.S. sec. 2333, 17 Stats. at Large 94, Compiled Stats. 1901, p. 1433, 5 Fed. Stats. Ann. 1906, p. 45, 30 U.S.C.A. sec. 37, and is quoted in the margin.[2]

It will be noted at once that in place of the statutory exclusion of a "vein or lode * * * *known* to exist within the boundaries" of the placer, the land office inserted in its patent an exclusion of "any vein or lode * * * *claimed* or known to exist." A great part of the briefs and argument of counsel is devoted to this question. This phase of the appeal, however, has been definitely settled by the repeated holdings of the United States Supreme Court to the effect that the land office was not authorized to broaden the exclusion of known lodes by excluding claimed or known lodes. U. S. v. Iron Silver Mining Co., 128 U.S. 673, 9 S.Ct. 195, 32 L.Ed. 571; Iron Silver Mining Co. v. Reynolds, 124 U.S. 374, 8 S.Ct. 598, 31 L.Ed. 466. Subsequent land office decisions followed these rulings.

(2) In support of the contention that the Knox and Clark certificates of location segregated the lode claims from the public domain, respondent first relies upon the

[2]"Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of sections 21-24, 26-30, 33-48, 50-52, 71-76 of this title, including such vein or lode, upon the payment of $5 per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of $2.50 per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section 23 of this title, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof."

well-recognized rule that a valid and subsisting lode location, made and kept up in accordance with the provisions of the statutes of the United States, continues to subsist until the lode is relocated by another. Nash v. McNamara, 30 Nev. 114, 133, 93 P. 405, 16 L.R.A. (NS) 168, Am.St.Rep. 694; 2 Lindley on Mines, 3d Ed., sec. 645.

Respondent then relies on Noyes v. Mantle, 127 U.S. 348, 8 S. Ct. 1132, 1134, 32 L.Ed. 168, to support the position of the trial court that the existence of a known vein was immaterial to the issue where the lode had been located. That case analyzes three situations involved in placer patent applications with reference to lodes with same. (a) The applicant may apply for the vein and 25 feet on either side of it, paying therefor $5 an acre, and $2.50 an acre for the placer. (b) Where the vein is known to exist but the applicant does not apply for same, this is construed as a conclusive declaration that he has no right of possession to such vein. (c) Where the existence of the vein is not known at the time of the placer patent application, the patent conveys all valuable mineral and other deposits within its boundaries. The court then proceeds to say: "The section can have no application to lodes or veins within the boundaries of a placer claim which have been previously located under the law of the United States, *and are in possession of the locators or their assigns;* for, as already said, such locations when perfected under the law are the property of the locators, *or parties to whom the locators have conveyed their interest.*" (Emphasis supplied.)

We do not find the foregoing statement, when considered in connection with the facts in that case, as applicable to our present problem. As to the facts, the court said: "There is no pretense in this case that the original locators did not comply with *all* the requirements of the law in making the location of the Pay Streak Lode mining claim *or that the claim was ever abandoned or forfeited. They were the discoverers of the claim.* They marked its boundaries by stakes so that they could be readily traced. They posted the required

notice which was duly recorded in compliance with the regulations of the district. *They had thus done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground.* The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time *upon proof of what they had done in locating the claim* and of subsequent expenditures to a specified amount in developing it." (Emphasis supplied.) Here respondent was not the discoverer of the claim. The placer had been located in 1891 by appellants' predecessors. So far as concerns the actual ground within the exterior boundaries of the placer, appellants and their predecessors had since then been virtually continuously in possession, since 1923 under actual patent from the United States, and actually working the property at the time of respondent's lode filing in 1955. Neither Knox and Clark, the 1917 locators, nor anyone holding under them was in possession of the asserted lode. Respondent was not their assign. The evidence presented more than "a pretense" that the Knox and Clark claims had been abandoned, and more than a pretense that respondent did not comply with all the requirements of the law in locating the Pal Lodes. The fundamental requirement of a discovery is denied, and is the subject of our further discussion infra.

Analyzing Noyes v. Mantle, 127 U.S. 348, 354, 8 S.Ct. 1132, 32 L.Ed. 168, 15 Morr. Min. Rep. 611, Professor Lindley says: "[I]t is quite manifest that the lode was discovered and located prior to the location of the placer." 2 Lindley on Mines, 3d Ed. 971. Accordingly, in Noyes v. Mantle, the subsequent placer claimant sought the ground claimed by the prior lode locator. In the present case the lode locator in 1955 seeks the ground covered by placer locations since 1891, and held under patent since 1923.

A similar distinction of a situation like the present one from the situation in Noyes v. Mantle is made in Wilson Creek Cons. M. & M. Co. v. Montgomery, 23 L.D. 476, where the Secretary of the Interior said: "The

proposition that any recorded notice of a so-called lode location is conclusively presumptive of the existence of a valuable lode or vein within its limits * * * would seem * * * only to be stated to be refuted." The opinion then goes on to state that the holding in Noyes v. Mantle was based upon the following statement by the court: "There is no pretense in this case that the original locators did not comply with all the requirements of the law in making the location of the Pay Streak lode mining claim, or that the claim was ever abandoned or forfeited." That situation existed neither in the Wilson Creek case nor in the instant case.

In view of the clear and convincing proof required of the plaintiff under the authorities herein cited to show the existence of a known lode within the placer at the time of the patent application as distinguished from the only proof received in this case, namely, the location certificates filed by Knox and Clark with whom the plaintiff was in no way connected, we find it unnecessary to discuss the contention of appellants that the issuance of the placer patent by the land department was an adjudication that no known lode existed and was res judicata. Such a holding is unnecessary to a determination of this appeal. In fact the cases cited by appellants in support of this contention for the most part involved elements that are not present here. We cannot entirely ignore the fact, however, that the land office was alerted to the fact that not only had an adverse claim been filed but a suit commenced in support thereof, thus sharpening the requirement of department rules that a field examination be made to determine the character of the land and to set forth known veins within the placer ground.

In the recent case of Berto v. Wilson, 74 Nev. 126, 324 P.2d 843, we noted the distinction between two classes of cases in determining the sufficiency of a discovery. There the dispute was between two locators upon the same lode and application of the liberal rule was

indicated, and it was pointed out that proof of discovery in such case might be wholly insufficient in cases where the ground is claimed as placer. The distinction may be thus expressed. Where the dispute is between locators on the same lode, a discovery is sufficient if it will warrant the expenditure of time and money in development to confirm the apparent existence of values. Where the dispute is between a lode and a prior placer location, the apparent existence of values must have been confirmed before a discovery of a *known* lode, as contemplated by the exclusionary clause of R.S. 2333, can be said to have been made. See cases cited infra.

In re Valley Lode, 22 L.D. 317, involving a similar conflict to the one before us, the Secretary of the Interior held: "There is no evidence before the Department that a known lode did exist in the [placer] ground claimed by the Valley within the limits of [placer] mineral entry 575 at the date of the application for patent therefor. The Department cannot assume that a known lode does exist simply because the lode location antedates that of the placer, especially after the placer patent has gone out."

In the dissenting opinion of Mr. Justice Field (who wrote the opinion of the court in Noyes v. Mantle), in Iron Silver Mining Co. v. Mike & Starr Gold and Silver Mining Co., 143 U.S. 394, 12 S.Ct. 543, 552, 36 L.Ed. 201, 211, it is said: "As stated above, there can be no location of a lode or vein until the discovery of precious metals in it has been had. And then it is not every vein or lode which may show traces of gold or silver that is exempted from sale or patent of the ground embracing it, but those only which possess these metals in such quantity as to enhance the value of the land and invite the expenditure of time and money for their development. No purpose or policy would be subserved by excepting from sale and patent veins and lodes yielding no remunerative return for labor expended upon them. Such exceptions would only be productive of embarrassment to the patentee, without any benefit to others."

Respondent concedes that there is no evidence of the lode locations existing in 1919 within the boundaries

of appellants' placers other than the Knox and Clark certificates of location and the sundry notices of proof of labor or claims of exemption above described. Yet, the validity of the Knox and Clark locations, sufficient to segregate the land from the public domain, and the existence of the lodes known as the Alunite, Alunite No. 1, Sulphate and Pacific No. 2 located by Knox and Clark in 1917 both depended upon a valid discovery. Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 328, 64 L.Ed. 567, dealt with the probative force of recitals of discovery in the recorded locations. The court said: "The general rule is that such recitals are mere ex parte, self-serving declarations on the part of the locators, and not evidence of discovery." In support of this the court cites: Creede & Cripple Creek Min. & Mill Co. v. Uinta Tunnel Min. & Transp. Co., 196 U.S. 337, 352, 25 S.Ct. 266, 49 L.Ed. 501, 509; Lindley on Mines, 3d Ed., sec. 392; Mutchmor v. McCarty, 149 Cal. 603, 607, 87 P. 85; Strepey v. Stark, 7 Colo. 614, 619, 5 P. 111, 17 Mor. Min. Rep. 28; Magruder v. Oregon & C.R. Co., 28 Land Dec. 174. The court then adds: "This rule is recognized and applied in Nevada. Fox v. Meyers, 29 Nev. 169, 186, 86 Pac. 793; Round Mountain Min. Co. v. Round Mountain Sphinx Min. Co., 36 Nev. 543, 560, 138 Pac. 71." In the former case this court, speaking through NORCROSS, J., said: "Proof of posting a location notice at a certain point, containing a recital therein that a discovery had there been made * * * would not be evidence prima facie of a discovery * * *." Judge NORCROSS, again speaking for the court in the Sphinx case quoted with approval the following language of Professor Lindley: "Discovery is the most important of all the acts required in the proceedings culminating in a perfected location. It is the foundation of the right without which all other acts are idle and superfluous."

In Thomas v. South Butte Mining Co., 211 Fed. 105, 107, the Circuit Court of Appeals of the Ninth Circuit said: "* * * the mere fact that mineral lode locations were made is not proof that the ground on which they were located contained a vein or lode within the meaning of section 2333 of the Revised Statutes (U.S. Comp. St.

1901, p. 1433) [30 U.S.C.A. § 37]. A mere location of an alleged vein or lode is not sufficient to prove that a vein or lode was known to exist. Migeon v. Montana Central Ry. Co., [9 Cir.] 77 Fed. 249, 23 C.C.A. 156. The lode or vein which is known to exist so as to be excluded from the patent must be one which contains mineral of such extent and value as to justify expenditures for the purpose of extracting it. Migeon v. Montana Central Ry. Co., 77 Fed. 249, 23 C.C.A. 156; Casey v. Thieviege, 19 Mont. 342, 48 Pac. 394, 61 Am.St.Rep. 511."

In Clark Montana Realty Co. v. Ferguson, 218 Fed. 959, 963, Judge Bourquin, speaking for the District Court of the District of Montana, said: "If located, in any controversy involving the respective rights of the lode claimant and the placer patentee, the burden is upon the lode claimant to prove the lode was known to exist when the placer patent was applied for. And the proof in effect impeaching the patent proceedings, if not the patent, for fraud, seeking to withdraw or except from a solemn grant over the seal of the United States premises prima facie conveyed by it, must be clear and convincing, in quality and quantity that inspires confidence and produces conviction.

"To so establish that a lode was known to exist when the placer patent was applied for, it must appear that at that time the lode was clearly ascertained and defined, and of such known extent and content that, in view of all circumstances and conditions affecting its worth, such as the importance locally attached to like lodes under similar conditions, ease or difficulty of development, facilities for ore treatment, cost of mining and reducing ores, reasonable probabilities of development, and the like, it then would have justified location, development, and exploitation, and because of which it and the area attaching to or excluded with it then were valuable, and more valuable than for placer mining purposes.

"Float, outcrop, lodes, and abandoned lode locations, separately or combined, are not sufficient to constitute a lode 'known to exist,' within the exception of a placer patent. In addition must be the known quality above defined. And the reason is lodes exist throughout the

mining country. Not one in hundreds justifies development and proves of value. No reason exists to except the valueless from placer patents or grants, and such patents issued or grants made without excluding them prima facie lodes of value did not exist. The issue is determined now by conditions as they were when the placer patent was applied for, even as though tried and determined then. Subsequent development and results, however marvelous, are immaterial * * *. The sanctity of a solemn grant of lands by the United States and the definiteness and certainty that should attach thereto and the stability of titles evidenced thereby, can only thus be preserved. See Iron Silver case, 143 U.S. [394] 405, 12 S.Ct. 543, 36 L.Ed. 201; Migeon v. Montana Cent. Railway Co., [9 Cir.] 77 Fed. 249, 256, 23 C.C.A. 156; Thomas v. South Butte Mining Co., 211 Fed. [105] 106, 128 C.C.A. 33; Mason v. Washington-Butte Mining Co., [9 Cir.] 214 Fed. [32] 34, 130 C.C.A. 426."

See also Migeon v. Montana Central Railway Co., 77 Fed. 249, 257, in which reliance was unsuccessfully made on Noyes v. Mantle, supra. There, as here, where it was claimed that a prior location of a lode claim removed it from a placer patent, the court said of the lode: "The owners quit work thereon, and, after they left it, they never bothered themselves about it." See also McConaghy v. Doyle, 32 Colo. 92, 75 P. 419.

The foregoing authorities refute both contentions of respondent. Under the facts herein recited, and in the absence of proof of a discovery, the filing of the Knox and Clark 1917 certificates of location did not segregate the ground from the public domain so as to prevent the United States from issuing its patent in 1923; nor did it prove the existence of a known lode at the time of the placer patent application in 1919.

Reversed and remanded, with costs, with direction to enter judgment for appellants.

EATHER and MERRILL, JJ., concur.