THE DREDGE CORPORATION, A NEVADA CORPORA-TION, APPELLANT, v. HUSITE COMPANY, A NEVADA CORPORATION, RESPONDENT.

No. 4413

February 28, 1962                    369 P.2d 676

[Rehearing denied April 2, 1962]

*Deaner, Butler & Adamson,* of Las Vegas, and *George W. Nilsson,* of Los Angeles, for Appellant.

*Cantwell, Loomis & Murphy,* of Reno, for Respondent.

70

## OPINION

By the Court, BADT, C. J.:

Appellant corporation, which was plaintiff below, will be referred to as Dredge. Respondent corporation, defendant below, will be referred to as Husite. Dredge filed its complaint to quiet title to eight community placer mining claims, alleging that it was the owner and entitled to possession thereof, and that Husite asserted an estate or interest therein, which was, however, without right. The land covered by the placer claims is described as sections 16 and 21, T. 20 S., R. 60 E., M.D.B.&M., in Clark County, Nevada. The pleadings will have to be referred to later at greater length. Under such pleadings and under the circumstances hereinafter set forth, both parties sought a summary judgment. Dredge's motion for summary judgment was denied, and Husite's motion for summary judgment granted and judgment entered accordingly. From such judgment Dredge has appealed.

Dredge claims title by reason of its placer locations. Husite asserts title by reason of two patents from the United States for some 12,000 acres of land, including the two sections embraced in the placers. The summary judgment in favor of Husite was based on Husite's patents. See infra, the chronological order of the locations, filings, etc.

Dredge's amended complaint contained two counts. The first count alleged simply its ownership of the eight placers, Husite's claim of title, and that the latter was without right. The second count included such allegations and alleged that Husite claimed title to the described lands in fee simple by reason of two patents

from the United States government; that said patents were issued in exchange for other lands which were subject to a reservation of minerals by Southern Pacific Land Company, former owner, and that Husite's application for an exchange of lands excluded "existing gas and oil leases and other valid mineral rights"; that, under the provisions of the Taylor Grazing Act, when an exchange is based on lands of equal acreage and the selected lands are mineral in character, the patent shall contain a reservation of minerals to the United States; that since Husite's application and amended application under the Taylor Grazing Act offered to exchange lands in which minerals were reserved, and that since the Husite application excluded valid mining claims, Dredge, "the owner of eight valid placer mining claims," was not required to file any objection to such application for exchange; that at the time of Husite's application Dredge was the owner of said mining claims; and that by reason of the premises the United States was without authority to grant a fee simple title to Husite, and that Husite holds all mineral rights in said claims in trust for Dredge. Dredge accordingly prayed that its title be quieted to the placer claims and that Husite be enjoined and barred from asserting any adverse claim therein; also that the court adjudge that Husite holds in trust for Dredge the said sections 16 and 21.

Husite answered, admitting that it claimed title by reason of the two patents which were issued by the United States in exchange for lands which were subject to a reservation of minerals by the Southern Pacific Land Company, a former owner, and admitting that its application for exchange excluded "existing gas and oil leases and other valid mineral rights," and admitting the provisions of the Taylor Grazing Act, above recited, in connection with reservation of minerals to the United States. Husite's second defense asserted that the particular provision of the Taylor Grazing Act, relied upon by Dredge, was only a partial recital of the provision, was not applicable to the exchange in question, and cited at length provisions of the Taylor Grazing Act assertedly applicable to the present exchange whereunder

either party to an exchange may make reservations of minerals, easements, or rights of use.

As a third defense, Husite alleged that the complaint failed to state a claim against Husite upon which relief could be granted. As a fourth defense, Husite pleaded that Dredge had waived any right to hold the placer mining claims because it had failed to file a protest to the exchange application, although with notice and knowledge of the proposed exchange. Husite's sixth defense was that Dredge was guilty of laches in that it had notice of Husite's claim to absolute and exclusive ownership and nevertheless refrained from commencing any action at law or equity "to enforce its rights for a period of more than four years after patents to said property were issued" to Husite. As a seventh defense, Husite asserted an abandonment by Dredge by reason of its failure to protest Husite's application.

Husite's eighth defense alleged that Dredge's claim was invalid in that its locations prior to patent were void after the issuance of patent. Husite's ninth defense alleged that Dredge does not hold a legal mining claim on the asserted placers in that (among other things) (c) the property described in the amended complaint is nonmineral in character and not subject to location or holding under the laws of the United States or the State of Nevada; and (d) that plaintiff had not discovered minerals within the limits of said claims or any of them, sufficient in quantity or quality to constitute a valid discovery.

Other paragraphs and subdivisions of paragraphs contained in the answer have been omitted as unnecessary to the determination of the appeal.

Husite's counterclaim alleged that it was and had been for many years the owner and in possession of all said sections 16 and 21 under patents identified by number, issued by the United States pursuant to an exchange of lands under the provisions of 43 U.S.C.A., Chap. 8A, sec. 315g (Supp. 1961), subsections (b) and (d), Taylor Grazing Act, as amended, and regulations of the Secretary of the Interior, 43 C.F.R. 146; that Dredge claimed an adverse interest by reason of certain mining claims,

but that Dredge had failed and neglected to protest or file objection to Husite's application for patent, although with notice and knowledge thereof and that its claims were without right and prayed that Dredge be barred from asserting any claim to the land. Annexed to such answer and counterclaim as exhibits were photostat copies of the two United States patents referred to. The first patent reserved to the United States all oil and gas deposits covered by existing oil and gas leases and all uranium, thorium, or any other material which is or may be determined to be peculiarly essential to the production of fissionable materials. The second patent quit-claimed to Husite all rights possessed by the government by reason of the reservation contained in the first patent.

Dredge replied to the counterclaim, admitted Husite's holding of the patents as alleged by it, but alleged that the patents were ineffective to convey to Husite the mineral rights, and alleged that notice to Dredge of the exchange application was ineffective so far as concerns Dredge's right to the land.

Husite moved for a more definite statement and Dredge now relies upon the information given in such "More Definite Statement" in response to such motion as establishing facts precluding a summary judgment in favor of Husite. To show more definitely "the means by which and the date on which Plaintiff and its predecessors in interest 'became the owner and entitled to possession' of said mining claims as alleged in * * * the complaint," as a showing of such facts, we find Dredge's statement: "Plaintiff became the owner and entitled to possession of the following mining claims by reason of the original location of said claims on the dates shown on the following schedule." Here each of the eight placers is then listed, with description of the legal subdivisions covered, each being a quarter section, and each showing its "Document No." (which we may assume for the purpose of this opinion to be that of the county recorder, although it is not identified as such) and each noting as "Dated Recorded, 7/14/52." It is then further recited: "The date of discovery of minerals corresponds to the date of location of said claims as shown by [said] schedule."

Such statement is unverified but is signed by the attorneys for Dredge. Other than such "More Definite Statement" and the statement of Dredge's conclusions of law in its amended complaint that it is the owner of and entitled to the possession of the eight described placers, and any admissions found in Husite's pleadings, there is nothing further in the record to support the repeated contentions in appellant's briefs and oral argument that Dredge was and is the owner of these eight "valid" placer mining claims. Dredge did not oppose Husite's motion for summary judgment by submitting the originals or copies of the location *notices* referred to in its schedule supporting its "More Definite Statement." Perhaps more important, it did not allege the recording of any location *certificates* or facts required by statute to be contained therein. And perhaps more important still, it did not by affidavit or otherwise submit any proof that it had ever made a discovery—and this, in the face of the admitted patents issued to Husite, covering the same ground under its original application filed over two years prior to the date of the purported location *notices*. We discuss later the entire absence of statutory or other presumption of discovery or location resulting from the recording of the location *notices*.

At this point it would be well to indicate the chronology of the filings involved in this appeal.

July 19, 1950—Husite's original exchange application under section 8 of the Taylor Grazing Act filed.

July 1, 1952—Husite's amended application filed.

July 14, 1952—Dredge's location notices recorded, and asserted in Dredge's "More Definite Statement" to be likewise *the date of discovery of mineral* on each claim.

January 27, 1953—date of patent to Husite for approximately 12,000 acres of land, including all of sections 16 and 21, the two sections claimed by Dredge by reason of its asserted locations.

February 23, 1956—date of amended patent to Husite.

January 27, 1959—Dredge's complaint to quiet title filed.

Against this record we are confronted with the constant assertions and repetitions in appellant's briefs and

oral argument to the effect that the filing of the location notices segregated the placer claims from the public domain to the end that the United States was without authority to patent the land to anyone else until it had determined by proper objection or contest, hearing, proof, and decision that the claims were not valid.

Specifically Dredge assigns as error the trial court's refusal to grant its motion for summary judgment, its order granting Husite's motion for summary judgment, and dismissing the complaint with prejudice, "because [of] undetermined issues of fact tendered by the defendant's answer, counterclaim and cross-complaint."

In its briefs and oral arguments Dredge amplifies these assignments of error as follows: A. Dredge's title to its eight asserted placers, so far as Husite was concerned, was equivalent to a fee title. This, because (1) on the dates of issuance of the patents to Husite the eight placers were valid, subsisting placer mining claims, because the claims had been located on the ground, copies of location notices recorded, all in accordance with the requirements of the mining laws; (2) because neither Husite nor the United States had questioned the validity of the eight placers prior to the issuance of the patents to Husite; (3) because mining claims are valid until abandoned or declared invalid after the filing of a proper contest and after notice, hearing, and determination.

B. Dredge's next contention is that the Department of the Interior had no authority to issue the patents because Dredge owned eight valid and subsisting placer mining claims, which withdrew sections 16 and 21 from the public domain.

C. Dredge's next specific assignment of error is that "numerous issues [of fact] were tendered by Husite."

(1) Dredge's assignments of error, as outlined in its assignments A and B, may be grouped together. All these assignments are premised upon the statement quoted from Wilbur v. United States, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445, as follows: "The rule is established by innumerable decisions of this Court, and of State and lower federal courts, *that, when the location*

*of a mining claim is perfected under the law,* it has the effect of a grant by the United States of the right of present and exclusive possession. The claim is property in the fullest sense of that term; and may be sold, transferred, mortgaged, and inherited without infringing any right or title of the United States. * * * The owner is not required to purchase the claim or secure patent from the United States; *but, so long as he complies with the provisions of the mining laws,* his possessory right, for all practical purposes of ownership, is as good as though secured by patent."

We have underscored those parts of the quotation which are conditions entirely absent from the record in the instant appeal. No quarrel may be had with that statement of the law. It appears in numerous decisions of the United States Supreme Court and of this court and the courts of last resort in virtually all the mining states. To bring itself within the rule thus stated Dredge urges on page after page of its briefs and in continuous repetitions in its oral argument that it "owned" the land, that it had *"valid"* mining claims on the land, that its *"valid"* mining claims segregated the land from the public domain, that the United States did not own it and could not sell it or patent it or give it away to any other person without first, by an appropriate action against Dredge, disposing of its claims. When questioned during the oral argument, Dredge frankly conceded that its entire appeal was premised upon this contention that the two sections in question were covered by *valid* placer mining claims. True, it is said in its complaint, "I am the owner of this ground." True, it stated in its "More Definite Statement," unverified and signed only by its attorneys, who did not purport to have any actual knowledge in the premises, that it was in possession by reason of the work involved in staking the original claims and the assessment work performed thereon, and had filed location notices, and that the date of discovery corresponds to the date of the location, all on July 14, 1952. It is under such showing in the record that Dredge contends that it was entitled to a summary judgment in its favor and that the showing was sufficient to defeat

Husite's motion for summary judgment based on the patent issued to it.

It is, for our purposes, necessary only to refer to the following cases as determinative of appellant's main contention: Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Round Mountain Mining Co. v. Round Mountain Sphinx Mining Co., 36 Nev. 543, 138 P. 71; Earl v. Morrison, 39 Nev. 120, 154 P. 75; Gale v. Best, 78 Cal. 235, 20 P. 550, 12 Am.St.Rep. 44; Crofoot v. Hill, 74 Nev. 173, 326 P.2d 417; Wilson Creek Cons. M. & M. Co. v. Montgomery, 23 L.D. 476; United States v. Iron Silver Mining Co., 128 U.S. 673, 9 S.Ct. 195, 32 L.Ed. 571; Chino Land & Water Co. v. Hamaker, 39 Cal.App. 274, 178 P. 738; Southern Development Co. v. Enderson, 9 Cir., 200 F.2d 272; Western Pacific Railroad Co. v. United States, 108 U.S. 510, 2 S.Ct. 802, 27 L.Ed. 806; Noble v. Union River Logging R. R. Co., 147 U.S. 165, 174–175, 13 S.Ct. 271, 274, 37 L.Ed. 123, 127.

These cases firmly establish the following principles of law governing the determination of the main issues presented.

a. A patent is the act of a legally constituted tribunal, done within its jurisdiction, and passes the title.

b. Such patent is a final judgment as well as a conveyance. It is conclusive upon a collateral attack.

c. Such patent issued with a reservation of minerals is a conclusive and official declaration that the land is nonmineral, and that all the requirements preliminary to the issuance thereof have been complied with, and that all antecedent steps necessary to its issue have been properly and legally taken.

d. The basis of a valid mining claim is discovery. Discovery is the most important of all the acts required in the proceedings culminating in a perfected location. It is the foundation of the right with which all other acts are idle and superfluous.

e. Without a discovery there is no valid mining claim.

f. The proposition that any recorded notice of a so-called location is conclusively presumptive of the existence of valuable ore within its limits is without merit.

g. Upon a private exchange application under the Taylor Grazing Act the Department of the Interior, Bureau of Land Management, is required to investigate the validity of any claim on file with respect to the property. The rules of the department implement the statute, including requirements for examination and recommendation by the United States Geological Survey as to the mineral or nonmineral character of the land.

h. The mere filing of a notice of placer location, without more, does not segregate the ground from the public domain so as to prevent the United States from issuing a patent under any of the applicable laws of Congress, nor does it prove the existence of known mineral ground.

It is unnecessary for us to discuss the authorities cited by appellant to the effect that where the United States had theretofore parted with its title, a subsequent attempt to pass title to another by patent is void; or that when a patent is issued in violation of a statute or issued as a result of fraud it may, under a proper proceeding, be set aside. We may concede that such holdings are good law. They have, however, no application to the present appeal.

Appellant in support of its contention that a valid mining claim properly located and maintained in accordance with law segregates the ground legally embraced therein from the public domain, to the end that the United States may not lawfully convey such ground to a subsequent applicant, cites, among others, the following cases: Van Ness v. Rooney, 160 Cal. 131, 116 P. 392; Ames v. Empire Star Mines Co., 17 Cal.2d 213, 110 P.2d 13; Montgomery v. Gerlinger, 146 Cal.App.2d 650, 304 P.2d 93; In re Emblen, 161 U.S. 52, 16 S.Ct. 487, 40 L.Ed. 613; St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320;

Brown v. Luddy, 121 Cal.App. 494, 9 P.2d 326. A careful examination of those cases shows that in every one the mining claim upon which reliance was placed was a valid mining claim. While the facts differed in each of such cases, they showed in varying degree, that the mining claims were known to exist, that they could be identified and defined, that an actual location had been made, that a valuable mineral deposit on the lands had been discovered, that the location had been perfected in accordance with law, that the lands had become "known mineral lands," that the claims had been duly located. Proof of such facts is entirely lacking here.

(2) At this point it is important to consider the following: As under state practice, a demurrer to the bill in the federal court under the old federal rules, before the adoption of the new federal rules of civil procedure and before the demurrer was abolished in favor of the motion to dismiss, admitted the truth of the allegations of the bill. But for the acknowledged beneficial purposes of the motion for summary judgment, to the end that a long and protracted trial may be avoided if there be no disputed questions of fact, a motion for summary judgment now may be supported not only by the pleadings but by discovery procedures, demand for admissions, affidavits and depositions, etc. NRCP 56, discussed infra. Assuredly, in support of Dredge's own motion for summary judgment and in opposition to Husite's motion for summary judgment, Dredge was called upon to submit some factual proof through some of the methods permitted by NRCP rather than to repeat: "We own the ground. We had valid claims on it." We have heretofore cited in some detail Dredge's more definite statement filed in response to Husite's demand. Yet it refrained from any allegation or assertion that it had ever made a discovery of mineral, to any extent whatsoever, or of any value whatsoever, that it ever erected a monument, drove a stake, or posted a notice, restricting itself to an unsworn statement signed by its attorneys that it had recorded *location notices,* whose dates showed that the "asserted locations" had been made over two years after

the filing of Husite's exchange application. Dredge's only mention of a discovery is the unsworn statement, signed by its attorneys, in its "More Definite Statement," identifying the date of July 14, 1952 for the recording of its location notices by stating that the date of discovery of minerals corresponds to the date of location.

(3) During oral argument counsel for Dredge was asked whether he considered his attack upon the patent as a direct or collateral attack. He was inclined to think it was a direct attack, but contended that it made no difference. Burke v. Southern Pacific R. R. Co., supra, indicates clearly that the Supreme Court of the United States considered the attack to be collateral. This must indeed be so. A direct attack upon the patent could only be by an appeal within the proceeding or a suit against the government. The present attack first appears in Dredge's second cause of action against Husite, asserting that Husite claimed title by reason of its two patents from the United States and which conveyed no mineral rights to Husite. See our analysis of the pleadings at the beginning of this opinion. It is quite generally held that such an attack is collateral and not direct. Burke v. Southern Pacific R. R. Co., supra; 3 Lindley on Mines, Third Edition, 1889, 892, sec. 777; Round Mountain v. Round Mountain Sphinx Min. Co., 36 Nev. 543, 138 P. 71; Earl v. Morrison, 39 Nev. 120, 154 P. 75; Burfenning v. Chicago & St. Paul Ry., 163 U.S. 321, 16 S.Ct. 1018, 41 L.Ed. 175; Gale v. Best, 78 Cal. 235, 20 P. 550, 12 Am.St.Rep. 44.

(4) Dredge contends that under Section 8, Taylor Grazing Act Exchange (43 U.S.C.A. Chap. 8A, sec. 315g (1961 Supp.)), 48 Stats. 1272, the Bureau of Land Management was compelled to reserve any minerals from any patent issued. The section relied on reads in part as follows: "When an exchange is based on lands of equal acreage and the selected lands are mineral in character, the patent thereto shall contain a reservation of all minerals to the United States." It is clear however that this provision does not apply to the present case, but is restricted to exchanges between a state and the United

States. This is covered by 43 C.F.R. 147.1. The approval of Husite's exchange application was under 43 U.S.C.A., Chap. 8A, sec. 315g (1961 Supp.), subsections (b) and (d), pursuant to which the regulations of the Secretary, 43 C.F.R. 146, have to do with exchanges between individuals and the United States. The regulations provide that under such exchange the Secretary is authorized "when the public interests will be benefited thereby to accept on behalf of the United States title to any privately owned land within or without the boundaries of a grazing district and in exchange therefor to issue a patent for not to exceed an equal value of surveyed grazing district land * * *. Either party to an exchange may make reservations of minerals, easements, or rights of use. Whether an exchange will benefit the public interest shall be determined by the officer authorized to act [as provided in paragraph (b) of this section.]"

Under the foregoing provisions this was not an acre for acre exchange, as between a state and the United States requiring a reservation of minerals, but a value for value exchange between an individual and the United States, which did not contain such a restriction but placed it within the discretion and judgment of the land office.

(5) Dredge contends: "There was no claim by defendant Husite that there ever was a hearing or decision concerning the validity of the eight Dredge placer mining claims herein involved prior to the issuance of its patents, or at any other time. Before there could be any such decision, a contest must have been filed; a hearing must have been held under the Administrative Act, a decision rendered, with possible appeals and court action following." But the only thing before the Bureau of Land Management was the Husite exchange application. The record does not show just when the Bureau of Land Management made its examination of the ground to determine its mineral or nonmineral character. It must be assumed however that at some time during the period of two years before the asserted Dredge locations were

made, such examination and determination had been made, and the application was in process of going through the usual channels for issuance of patent. During that entire two-year period there had not been any mineral location on the ground, any evidence of mining operations, any monument claiming a discovery or a location, any stakes of any kind indicating a mining claim, any evidence to indicate that it was known mineral ground, any filing in any office indicating that any part of the ground was claimed as mineral ground. Under these circumstances (and without considering, for the moment, the fact that no protest or objection had been made following the publication of the exchange entry) there was nothing before the Bureau of Land Management to initiate a hearing and determination with reference to the validity of any mining claim. None such existed. There was nothing to call for any application of the Administrative Procedure Act.

(6) Dredge contends: "The actions and procedures of Husite in connection with the exchange, and the action of the Department of the Interior in attempting to deprive appellant, The Dredge Corporation, of its property are, and each is, in violation of The Constitution of the United States and of The Constitution of the State of Nevada, and therefore void, because such actions and procedures denied to The Dredge Corporation due process of law. They are also contrary to the provisions of Federal Mining Laws and the Administrative Procedure Act."

That this contention is without merit is evident from the undisputed facts. Dredge does not even assert that it was ever on or ever claimed or ever heard of any part of this land for over two years after Husite filed its exchange application. Upon the filing of such application the Bureau of Land Management published notice that any adverse claimants should file their claims or objections with the Bureau. Dredge had notice and knowledge of the filing of the exchange application but filed no claims to any part of the land or any objections to the granting of Husite's application. As the application

antedated by over two years any connection that Dredge may have had with this land or the title thereto, it is inconceivable that action thereon by the Department of the Interior could have violated any constitutional rights or any parts of the Administrative Procedure Act with reference to the nonexistent claims of Dredge.

(7) Dredge contends that it was the duty of the Bureau of Land Management, before proceeding to a patent in favor of Husite, to institute a proceeding to determine the validity or invalidity of Dredge's placer locations and to make a determination thereof after notice and hearing. As we have seen, for over two years after Husite's exchange application had been filed, there was nothing to indicate that Dredge had any interest or that anyone contended that the ground was mineral in character. As we have seen, the issuance of patent was a final judgment of the nonmineral character of the land, and the jurisdiction of the land department ended. This would appear to dispose of Dredge's contention that the land department was without jurisdiction to patent the land to Husite without having first, after notice and hearing, declared Dredge's mineral claims invalid.

(8) In support of its contention that Husite should be adjudged to be a trustee holding the land in trust for Dredge, it relies upon one sentence appearing in In re Emblen, 161 U.S. 52, 16 S.Ct. 487, 40 L.Ed. 613. In that case a subsequent mineral claimant sought mandamus to compel the Secretary of the Interior to hold a hearing to determine the mineral or nonmineral character of the land. The United States Supreme Court, after holding that the land department had lost jurisdiction with the issuance of the patent and that the same could not be revoked or set aside except upon judicial proceedings instituted in behalf of the United States, said: "The only remedy of Emblen is by bill in equity to charge Weed [the patentee] with a trust in his favor." Dredge says: "This is precisely what we have done." The court's statement does not, of course, mean that every subsequent mineral claimant against a nonmineral patentee has such a claim or cause of action in equity. If

the court could properly conclude, on the respective motions for summary judgment, that Dredge had no valid mining claims, then the imposition of a trust upon Husite's patent title for the benefit of Dredge's non-existing equitable title would be an empty gesture.

The conflicting affidavits referred to by appellant as presenting issues of fact requiring a trial had to do in the main with the legal effect of Dredge's failure to protest Husite's application; but, by reason of the conclusions reached by us, the only determinations required were determinations on questions of law.

(9) In view of our conclusion that the summary judgment in favor of Husite must be affirmed by reason of the entire absence in the record of any showing that the Dredge Corporation was the owner of valid mining claims on the property, we have not found it necessary to determine on this appeal whether or not Dredge was estopped from asserting the claims by reason of its failure to object to the granting of Husite's exchange application after notice and knowledge of Husite's application.[1]

(10) Dredge contends, citing numerous authorities, with which we are in entire agreement (see Parman v.

---

[1] In mining patent conflicts such failure to protest or object estops the claimant from later asserting his claims. 30 U.S.C.A., secs. 29, 30.

No case has been cited from any court holding that a mining claimant is likewise estopped by failure to object to an exchange application. The commissioner of the General Land Office in James R. Crawford, 53 I.D. 435, 438, had held in the case of a conflict of mining claimants with a school land indemnity list: " 'Moreover, it is as incumbent upon mineral claimants to keep advised of nonmineral applications pending in the General Land Office as it is to keep advised of mineral applications against which it would be necessary to file an adverse claim.' " The Secretary affirmed on the ground of the conclusiveness of the approval of the school land indemnity list and on the ground that there was no clear, unequivocal, and convincing evidence of fraud, nor that the approval of the list was the result of any error, mistake, or inadvertence in the Land Department. The Secretary stated however that the department was not in agreement with the commissioner's holding that the failure to protest was "attended with the same fatality to his possessory right as would follow from his failure to adverse a hostile mineral application. * * *" Crawford's motion for rehearing before the Secretary was denied. 53 I.D. 435, 439.

Petricciani, 70 Nev. 427, 436, 272 P.2d 492), that summary judgment is improper where any issues of fact remain for determination. It asserts that the conflicts raised in the supporting affidavit of Husite's motion for summary judgment and Dredge's affidavit in support of its opposition thereto present conflicting questions of fact which can be determined only by trial. As we have seen, the conflict in reality presented an issue of law and it was the province of the court to determine the same.

But Dredge contends that in any event questions of fact for determination resulted from the pleadings. Its argument is: "Dredge asserts that it is the owner of valid mining claims. Husite denies this. Cases interpreting the federal rules encourage the pleading of conclusions. The facts that will determine these conclusions were thus triable by the court." We must reject this contention.

NRCP 56, concerning summary judgment, is identical with the federal rule. Subdivision (e) reads in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *" In Lockhart v. Maclean, 77 Nev. 210, 361 P.2d 670, we affirmed a summary judgment in favor of the defendant. The plaintiff there contended on appeal that facts recited in an affidavit used in opposition to the motion for summary judgment required that the matter be tried. However, we approved the district court's ruling that the plaintiff had not shown that the affiant was a competent witness. Franktown Creek Irrigation Co. v. Marlette Lake, 77 Nev. 348, 364 P.2d 1069, involved an appeal from the district court's judgment affirming the final adjudication of the state engineer in a general adjudication proceeding to determine the relative water rights of the users of Franktown Creek. In such cases exceptions to the state engineer's final order of determination constitute pleadings. The exceptions of the appellant had been verified by appellant's secretary

and contained the statement that appellant's use of the waters during the required statutory period was "open, notorious, hostile, and adverse." Appellant insisted that such averment in its pleading, verified by an officer of the company, created an issue of material fact and thus precluded a summary judgment. However the affiant subsequently gave a fact deposition covering the same subject matter which did not support the averment mentioned. We said: "Under such circumstances, we hold that, in deciding whether an issue of fact is raised, the lower court must rely upon the fact deposition of such person and disregard the conclusions of his verified pleading. Bennett v. Flanigon, 7 Cir., 220 F.2d 799, 803." Franktown Creek Irrigation Co. v. Marlette, supra, at 352. The amended complaint, upon which Dredge relies in support of its contention that such amended complaint presented a factual issue, was verified by plaintiff's attorney as "true to the best of his knowledge, and has been related to your affiant by the plaintiff [corporation] herein." The "More Definite Statement," furnished by Dredge in response to Husite's demand and on which Dredge relies for its recital of facts requiring a trial, is signed by Dredge's attorneys but contains no verification of any kind. Dredge's proposed amended complaint adding two additional causes of action is likewise signed by Dredge's attorneys without any verification. In United States v. Halpern, 3 Cir., 260 F.2d 590, the court, citing numerous authorities, said: "Rule 56(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that affidavits opposing, as well as supporting, summary judgment shall be made on personal knowledge of facts which would be admissible in evidence. The opposing affidavit of the defendants' counsel was accordingly clearly incompetent to raise an issue of fact which would bar summary judgment. * * * Since the answer did not controvert the allegations of the complaint by denying them or by setting up countervailing facts and since the allegations of the complaint were categorically supported by facts stated specifically on personal knowledge in the plaintiffs' supporting affidavit and not rebutted, the record did not disclose a genuine issue as to any

material fact."[2] The portions of the record and pleading relied upon by Dredge did not present factual issues which would preclude a summary judgment.

(11) Dredge assigns error in the trial court's denial of its motion for leave to file a further amended complaint adding a third and fourth cause of action. The proposed third cause of action again discusses the opposing affidavits to the asserted effect that the same estopped Husite from asserting Dredge's failure to protest Husite's exchange application. This adds nothing new. The third proposed cause of action further asserts that Husite "for the purpose of defrauding the plaintiff of its title thereto" falsely represented to the land department that the selected lands were unappropriated and not occupied, claimed, improved, or cultivated adversely to the applicant; that such false statement was made to deceive the department and defraud Dredge, and as a true statement had been made "that location notices of the eight placer mining claims owned by the Dredge Corporation were of record and * * * in conflict" with Husite's application, the department should have set up a hearing to determine the mineral character of the eight placers and their validity; that the department made no investigation or determination; and that the land is in fact mineral. Most of these matters have heretofore been discussed. Husite's affidavit that the land was unoccupied and unclaimed, as against Dredge's placers, we have seen to be true. The placers were not attempted to be located or notices recorded until two years after the exchange application. The third cause of action thus added nothing.

---

[2]In a preliminary draft of proposed amendments to Rules of Civil Procedure for the United States district courts (Committee on Rules of Practice and Procedure of the Judicial Conference of the U.S., October 1961) the Committee, in recommending an amendment not pertinent here, said: "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. * * * It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment."

The proposed fourth cause of action was based on appellant's affidavit as supporting "the [oral] contract of Husite to convey to The Dredge Corporation complete title to sections 16 and 21," and the prayer is that Husite be ordered to convey to Dredge all the mineral rights in the property. To have permitted this amendment would simply have permitted the assertion of a claim which was on its face barred by the statute of frauds. NRS 111.205(1). There was neither error nor abuse of discretion in denying the motion to amend by adding these two causes of action.

(12) Dredge's brief in support of its motion for summary judgment and in opposition to defendant's motion for summary judgment was filed May 31, 1960, and its closing brief on these motions was filed December 5, 1960. Both briefs are voluminous and in effect argue the same points and cite the same authorities which it has presented to this court on its appeal. On January 5, 1961, the court advised counsel that upon the review of the record it did not feel that further oral argument would be appropriate and that a decision would be rendered as the matter then stood submitted. Dredge assigns this action as error. The assignment has no merit.

The order and judgment denying appellant's motion for summary judgment and granting respondent's motion for summary judgment and dismissing plaintiff's complaint with prejudice are hereby affirmed with costs.

MCNAMEE and THOMPSON, JJ., concur.