DOROTHY Y. OSBORN, APPELLANT, v.
RICHARDSON–LOVELOCK, INC., RESPONDENT

No. 4543

February 8, 1963                                                                378 P.2d 521

_Springer, Hug & Newton,_ of Reno, for Appellant.

_Adams, Reed, Bowen & Thatcher,_ of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

The main question presented on this appeal is whether the lower court committed error in sustaining respondent's plea of estoppel as a defense to appellant's complaint for conversion of an automobile. Other questions are also disposed of. We turn first to the facts.

Appellant, Dorothy Y. Osborn, and Jewell E. Osborn were married in December, 1945. In January, 1958, they bought a used 1957 Ford station wagon. The funds used for the purchase were Dorothy's sole and separate property but the certificate of title (pink slip) and the registration certificate (white slip) were issued in the name of her husband. The certificate of title was at all times kept in a file box at the home in California. In December, 1959, Dorothy and Jewell separated and Dorothy commenced an action in California for divorce. At the time of the separation Jewell conveyed to Dorothy all his interest in the California home, but Dorothy did not request Jewell to endorse over to her the title certificate to the Ford. Jewell advised that he wished to make a trip to Mexico and to use the 1957 Ford for that purpose. Appellant consented, giving as her reason: "I would rather have him driving it in his name; he was very reckless." However, instead

of going to Mexico, Jewell came to Reno, and on January 5, 1960, offered to turn in this car to respondent for credit upon a new Ford station wagon, informing respondent at that time that the title certificate, or "pink slip," had been lost. However, he did have possession of the registration certificate, or "white slip." On that date respondent telephoned the Division of Registration, Department of Motor Vehicles, Sacramento, California, which advised respondent that J. E. Osborn was the owner of the 1957 Ford station wagon and that the title certificate was in his name. Respondent then inquired as to what procedure was necessary to transfer title and to acquire a new certificate in its name. Upon being informed, Jewell Osborn executed, on the printed form supplied by the California State Department of Motor Vehicles, his statement of the loss of the original certificate of title and his request for the issuance of a duplicate. This was forwarded by respondent, together with Osborn's authorization to mail such duplicate to respondent.

On the following day, January 6, 1960, Osborn entered into a contract with respondent for the purchase of a new 1961 Ford station wagon, upon which he was given a credit for $1,350 for the 1957 Ford, and took delivery of the new car. Subsequently, on January 27, 1960, the court in which the divorce action was pending issued a temporary restraining order restraining the Department of Motor Vehicles from transferring the title. An interlocutory decree was entered by that court May 5, 1960, adjudging that the 1957 Ford station wagon was Dorothy's property, and directing the California Department of Motor Vehicles to issue a new ownership certificate to her. All these proceedings became known to respondent for the first time on May 3, 1960. In the meantime Dorothy had come to Reno in January, 1960, saw her husband, did not discuss the car with him, or demand its return. In fact it became evident to her that he had turned the 1957 Ford in upon the purchase of a new car.

On May 3, 1960, respondent sold the 1957 car, but discovered that it had no title documents for same, and,

upon telephoning the California Department of Motor Vehicles, was advised that a restraining order had been issued and served, and that transfer of title to respondent was refused. Thereafter Dorothy demanded return of the car or its value, and upon refusal, commenced this action.

Respondent pleaded estoppel as a special defense, reciting the facts as above outlined. Both parties sought a summary judgment. Appellant's motion was denied, and respondent's motion granted. This appeal followed. We first dispose of some preliminary matters.

1. Appellant contends that summary judgment was not authorized because genuine issues of material fact were present. However, all the facts above recited are uncontroverted and were fully brought out by appellant's answers to respondent's interrogatories, by the deposition of the appellant, and by the uncontradicted affidavit of the respondent. In Dredge Corporation v. Husite Co., 78 Nev. 69, 369 P.2d 676, 687, this court cited with approval United States v. Halpern, 3 Cir., 260 F.2d 590 as follows: "Rule 56(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that affidavits opposing, as well as supporting, summary judgment shall be made on personal knowledge of facts which would be admissible in evidence. The opposing affidavit of the defendants' counsel was accordingly clearly incompetent to raise an issue of fact which would bar summary judgment. * * * Since the answer did not controvert the allegations of the complaint by denying them or by setting up countervailing facts and since the allegations of the complaint were categorically supported by facts stated specifically on personal knowledge in the plaintiffs' supporting affidavit and not rebutted, the record did not disclose a genuine issue as to any material fact." There is no merit in this assignment.

2. Appellant next contends: "Failure of respondent to receive and take into his possession the certificate of title, properly endorsed, prohibited him from becoming the owner of said automobile." In support of this

contention appellant first asserts that the issue must be determined under California law (which respondent does not dispute), and then proceeds to quote sections 5600, 5750, 5753, 5911, and 5906, in that order, of California Motor Vehicle Code. Section 5600 reads in part as follows: "Transfer Requirements. No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements:"

Subdivisions (a) and (b) of this section then describe the endorsement and delivery of certificate of ownership and registration card and the delivery thereof to the department, or placing the same in the mail addressed to the department, with application for transfer. Reference to other sections of the code is made in said subdivisions.

It should be noted that section 5600 does not declare that a transfer without complying with the provisions of the section shall render the transfer void but merely that it shall not be effective until the parties have complied. This must necessarily be so, in view of the possibility that the certificate of ownership may be lost. This contingency is provided for in section 5752 of the California Motor Vehicle Code. This section reads as follows: "§ 5752. Endorsement When Certificate Unavailable. When the required certificate of ownership is lost, stolen, damaged, or mutilated, application for transfer may be made upon a form provided by the department for a duplicate certificate of ownership. The transferor shall write his signature and address in the appropriate spaces provided upon the reverse side of the application and file the same together with the proper fees for duplicate certificate of ownership and transfer."

And section 5911 provides specifically for the procedure when the original certificate of ownership or registration is lost and proper application to the department is made. Under such section the department may examine into the circumstances of the case, require the filing of affidavits or other information, and, when satisfied, may transfer the registration, or register the

vehicle, and issue new certificates of ownership and registration to the persons found to be entitled thereto.

It should be noted too that under section 5906 when the transfer is made to a dealer who holds the same for resale, application for transfer is not required to be made until such resale.

An illuminating picture of the legal situation resulting from the code appears in Henry v. General Forming, Limited, 33 Cal.2d 223, 200 P.2d 785, 787: "In his argument the plaintiff assumes 'illegality' of the 'contract'. He talks of the 'illegal transaction' and 'illegality' of the transaction. The assumption may not be indulged. The code provisions do not aim at tainting with illegality the sale and purchase of an automobile which is the only contract or transaction involved. The requirements deal solely with registration of ownership to give notice of the transfer after the purchase has been consummated.  *   *   * The legal consequences of violation of provisions for registration are to be resolved by the express provisions of the Vehicle Code. The failure of the passing of title or ineffectiveness of an attempted transfer thereof declared to follow noncompliance (section 186), and 'illegality' of the purchase and sale transaction are distinct and unrelated factors in the sense that the latter without more does not flow from the former. The requirements for registration of title and ownership, as indicated by the Code provisions, were enacted in the interest of the public welfare to protect innocent purchasers and afford identification of vehicles and persons responsible in cases of accident and injury.  *   *   *"

As noted above in the recital of facts, compliance was made by respondent with the code requirements growing out of Jewell Osborn's statement that the certificate of title had been lost. It is clear to us that nothing in the California Motor Vehicle Code or in respondent's action thereunder rendered the sale void.

Appellant's contention that the failure of respondent to receive and take into his possession the certificate of title, properly endorsed, *prohibited him from becoming the owner of said automobile,* is not only a

misinterpretation of the applicable sections of the California Motor Vehicle Code, but is entirely irrelevant to the question of whether all the facts supported respondent's plea that appellant was estopped to assert her ownership. The assignment is without merit.

3. Appellant next contends that the facts did not warrant the application of the doctrine of estoppel to defeat appellant's claim of ownership in her action for conversion. In support of this contention appellant cites and quotes from a score or more cases which recite the necessary elements that must appear for the successful support of an estoppel in pais or estoppel by conduct. Respondent does not take issue with any of these cases, nor does the court. We are of the opinion that the facts as recited present a classic case for the justification of the trial court's holding that her actions estopped her from asserting her ownership of the car. She permitted the registration and ownership to remain in her husband's name; she clothed him with the indicia of title; and permitted him to retain possession. Obviously, under her own recitals, she did this because he was very reckless and she wanted to protect herself against liability for damages growing out of his driving of the car, under the California statute which imputes the driver's negligence to the owner. California Motor Vehicle Code, section 17150. That respondent was misled by her actions, as a result of which it parted with its ownership of a new car, taking the old car as a down payment, can hardly be questioned.

This case does not turn upon appellant's actual ownership of the car but upon estoppel to assert her ownership, a doctrine long recognized in equity. Respondent cites a few of these cases, which do as well as any, to illustrate the principle. Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072; Rapp v. Hauger Motors Co., 77 Cal. App. 417, 246 P. 1067; Sidney v. Wilson, 67 Cal.App. 282, 227 P. 672; Chucovich v. San Francisco Securities Corporation, 60 Cal.App. 700, 214 P. 263.

Appellant relies on Commercial Credit Corporation v. Smith, 76 Nev. 345, 353 P.2d 905, but the case is

clearly distinguishable. The owner retained the certificate of title and the purchaser made no inquiry about any indicia of title other than possession. We held that the mere delivery of possession did not clothe the dealer with indicia of title so as to estop the owner from asserting his title. Here respondent not only had the registration certificate in Jewell Osborn's name but he made further inquiry from the natural source, and learned that the ownership was also in Osborn's name, and the entire situation was created by Mrs. Osborn. The trial court's holding that she was estopped was entirely in order.

Affirmed with costs.

McNAMEE and THOMPSON, JJ., concur.